**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Kevin Anthony RICKS, Defendant-Appellant.**

**No. 86-8569.**

United States Court of Appeals, Eleventh Circuit.

May 20, 1987.

Stanley M. Baum, Atlanta, Ga., (court-appointed), for defendant-appellant.

Robert L. Parr, Jr., U.S. Atty., Thomas D. Bever, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before HATCHETT and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this criminal appeal, we fix the standard for dismissal of an indictment for prosecutorial misconduct before a grand jury to be a showing that the prosecutor's activities caused "unfairness or actual prejudice." Finding no error in the district court's rulings, we affirm.

## FACTS

On November 18, 1985, two armed men robbed the Decatur Federal Savings & Loan Association at Decatur, Georgia. One man positioned himself near the entrance to the savings and loan and held a large automatic hand gun; the other man, armed with a pistol, vaulted the tellers' counter and took approximately $17,000 from the cash drawers. The two men left the bank together. Two bank tellers later identified the appellant, Kevin Ricks, as the man who stood by the door holding the automatic hand gun. From a six-person photo spread, a third teller identified Ricks as one of the robbers.

On December 15, 1985, Federal Bureau of Investigation (FBI) agents arrested Ricks in Atlanta, at A.C. Boldin's apartment. While searching Ricks's person, the FBI agents found a locker key. After receiving Miranda (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)), warnings, Ricks told the FBI agents that the key belonged to a bus station locker. Ricks's statement was untrue; instead, the FBI agents found that the locker key fit a locker at the Atlanta Amtrak Train Station. After receiving a search warrant, the agents searched the locker and found a large automatic 9 millimeter hand gun. Also during Ricks's arrest, FBI agents asked Ricks whether he wanted to take with him a jacket that was hanging in a closet. Upon receiving an affirmative response, the FBI agents searched the jacket and found pieces of paper with the names, telephone numbers, and addresses of Larry Massey and A.C. Boldin.

## PROCEDURAL HISTORY

On January 9, 1986, Kevin Ricks and Larry Massey were indicted by a federal grand jury in the United States District Court for the Northern District of Georgia. The indictment charged one count of aiding and abetting in the robbery of the Decatur Federal Savings and Loan Association, using dangerous weapons and devices, in vio-

lation of 18 U.S.C. §§ 2113(a), 2113(d), and 2.

On February 6, 1986, the same grand jury returned a superseding indictment charging Ricks and Massey with the violations charged in the first indictment, but added a second count, charging them with knowingly and willfully using and carrying firearms during the bank robbery, in violation of 18 U.S.C. § 924(c).

The grand jury also indicted A.C. Boldin for receiving the proceeds of the robbery. Boldin, however, was never prosecuted; Boldin provided the information which led to the arrest of Ricks and Massey and he received immunity in return for this information.

A jury convicted Ricks on both counts. The district court sentenced him to a term of twenty-five years on Count I (bank robbery using a dangerous weapon) and to a term of five years, to run consecutively, on Count II (using and carrying firearms in committing the robbery).

## ISSUES AND CONTENTIONS

Ricks raises seven issues on appeal: Whether the district court erred (1) by denying his motion to dismiss the indictment; (2) by denying his motion to suppress the items found in his jacket; (3) by denying his motion to suppress the evidence found at the Amtrak Train Station locker; (4) in its finding that Ricks's *Miranda* rights were not violated; (5) by failing to find that the photo spread tainted a subsequent in-court identification; (6) in not directing the government to provide Ricks with all Jencks Act material; and (7) by imposing a sentence constituting double jeopardy in violation of the Fifth Amendment by sentencing him to two consecutive terms of imprisonment for the two counts of which he was convicted.

## DISCUSSION

### A. Motion to Dismiss

Ricks contends that the district court erred by denying his Motion to Dismiss because the prosecutor presented improper information regarding prior convictions to the grand jury. One of the grand jurors asked whether Ricks or Massey had prior convictions. An FBI agent stated that he "knew about one of them," referring to either Ricks or Massey. An Assistant United States Attorney immediately interrupted that colloquy and "stopped the flow of information" before any members of the grand jury were made aware of any actual data on Ricks or Massey. Ricks claims, however, that even though no actual data was communicated to the grand jurors, the damage had already been done by the juror's inquiry and the FBI agent's response. Ricks argues that the Assistant U.S. Attorney then compounded the problem by telling the grand jurors that information on prior convictions is not relevant, "especially since this is a superseding indictment." This comment, Ricks argues, implies that the level of evidence required for indictment was somehow diminished because a previous indictment had been returned.

■ The decision on a motion to dismiss a grand jury indictment is generally one which falls within the district court's broad field of discretionary powers. *United States v. Pabian,* 704 F.2d 1533 (11th Cir.1983). This circuit has not established a standard for determining when an indictment should be dismissed because of prosecutorial misconduct before a grand jury. The Fifth Circuit requires a defendant to show "unfair or actual prejudice." *United States v. Fulmer,* 722 F.2d 1192 (5th Cir. 1983). We think the Fifth Circuit's standard is adequate to protect the rights of the accused and also adequate to discourage prosecutorial misconduct. We adopt the "unfair or actual prejudice" standard for the Eleventh Circuit.

■ The government contends that Ricks has not shown any prejudice in this case. We agree. For Ricks to show that he has been unfairly or actually prejudiced, he must show that the indictment was returned due to the grand jury's assumption that Ricks had a prior criminal record. The trial jury convicted Ricks, without disclosure of any prior criminal record. This conviction, which required that the trial

jurors be convinced "beyond a reasonable doubt," makes it highly improbable that the grand jury indictment was based on insufficient probable cause. Furthermore, no improper information was ever communicated to the grand jurors about Ricks. The exchange between the juror and the FBI agent did not cause unfair or actual prejudice. Thus, we find no error in the district court's denial of Ricks's motion to dismiss the grand jury indictment.

### B. Motion to Suppress Items Found In Jacket

■ Ricks contends that the district court erred by denying his motion to suppress because the jacket was not subject to a legitimate search incident to his arrest. He claims that upon being arrested, the FBI agents conducted a security sweep of the entire apartment to determine that no other persons or weapons were present. In searching the apartment, an agent opened a closet where Ricks's jacket was hanging. The agent asked Ricks if he wanted to take the jacket with him. Ricks, not knowing that an affirmative answer would be construed as a consent to search the jacket's pockets, replied in the affirmative. Ricks claims that he never would have requested the jacket if he had known that by doing so he authorized the FBI agents to search its pockets. He argues that it was obvious that no weapons were in the jacket and that a detailed examination of his private and personal belongings was not required for security purposes.

The district court found that the search of Ricks's jacket, leading to the discovery of his wallet, was reasonable because he had no legitimate expectation of privacy, because the search was conducted incident to his arrest, and because the papers listing the names of Massey and Boldin, were discovered during a proper inventory procedure at the FBI office. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). When an arrest is made, the danger always exists that the arrestee will reach for a weapon or attempt to destroy evidence. In *Chimel,* the Supreme Court

held that for personal safety and to prevent the loss of evidence, an arresting officer may conduct a prompt warrantless search of the arrestee and of his "grab area." The grab area has been construed to mean "the area from within which [the defendant] might gain possession of a weapon or destructible evidence." *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969). In this case, the jacket, while not initially in Ricks's grab area, became subject to a legitimate search when the agent handed it to Ricks, thus placing it within Ricks's grab area. Therefore, we affirm the district court's denial of Ricks's motion to suppress the items seized from his jacket.

### C. Motion to Suppress Evidence Seized From the Amtrak Train Station Locker

■ Ricks contends that the district court erred by denying his motion to suppress because insufficient probable cause existed upon which to base the search warrant for the locker. A.C. Boldin supplied the information which led to a determination of probable cause. Ricks claims that Boldin is unreliable and not worthy of belief.

The government argues that Ricks had the burden of showing by a preponderance of the evidence that the affidavit contained false statements, that the affiant made the statements knowing that they were false, or with a reckless disregard for the truth, and that the false statements were necessary for the finding of probable cause. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The district court found that Ricks failed to carry this burden. We agree. Ricks has not demonstrated that the affidavit contained false statements, that the affiant knowingly or with a reckless disregard for the truth made any false statements, nor has he demonstrated that any false statements were essential for the finding of probable cause. Therefore, we affirm the district court's denial of the motion to suppress.

### D. *Miranda* Rights

Ricks contends that the district court erred by finding that his rights were sufficiently explained because the arresting agent gave Ricks his *Miranda* warnings from memory, "not from a card."

 An arresting officer need not read the warnings to a defendant; delivery from memory is sufficient as long as each of the fundamental warnings of *Miranda* is addressed. A determination of whether Ricks knowingly and voluntarily waived his rights is made in light of the "totality of the circumstances." *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). Whether a defendant understands the evidentiary value of his comments or not, he still may make incriminating statements, and his lack of understanding regarding the evidentiary value of the statements does not mean that his waiver was not made voluntarily or knowingly. *Harris v. Riddle,* 551 F.2d 936, 939 (4th Cir.1977), *cert. denied,* 434 U.S. 849, 98 S.Ct. 160, 54 L.Ed.2d 118 (1977). The district court's finding that Ricks's waiver was made voluntarily and knowingly must be upheld unless clearly erroneous. *United States v. Vera,* 701 F.2d 1349, 1364 (11th Cir.1983). Ricks has not convinced us that the district court's finding was clearly erroneous; therefore, we affirm on this issue.

### E. The Photo Spread

 Ricks contends that the district court erred by ruling that the photo spread was not impermissibly suggestive. Ricks wears glasses, and the photo spread included photographs of six males, all of the same race, only one of whom wore eyeglasses. Ricks alleges that the witness's later in-court identification of him was influenced by the witness's initial viewing of this photo spread in which no one wore glasses except him.

The government contends that the photo spread was not impermissibly suggestive and did not lead to a substantial likelihood of misidentification. The government emphasizes that the witness testified that she was not very far from where Ricks was standing during the bank robbery, that she observed him for at least a full minute, and that he was wearing sunglasses as opposed to eyeglasses. Ricks did not wear eyeglasses during the trial.

The in-court identification occurred nearly four months after the witness's identification of Ricks in the photo spread. Thus, even if the photo spread were suggestive, it is highly unlikely that the witness's selection of Ricks from the photo spread caused a mistaken identification. The witness testified that because of her opportunity to observe Ricks during the bank robbery, looking at the photographs did not affect her in-court identification. In light of the four-month period between the photo spread and the in-court identification, and considering the fact that Ricks did not wear eyeglasses during the trial, we do not find the photo spread impermissibly suggestive.

Although we do not find the photo spread in this case to be too suggestive, and although we would find any error on this issue harmless on this record as a whole, that is not to say that we approve of this practice. Prosecutors and law enforcement agents must guard against this type of photo spread. Likewise, the government's argument that the witness testified that her in-court identification sprang forth from the encounter in the bank rather than from the photo spread is a fact specific inquiry which carries an inherent risk of error.

### F. Request for Jencks Act Material

 Ricks contends that the Jencks Act, 18 U.S.C. § 3500, is a defendant's exclusive means for obtaining statements of government witnesses before trial. He claims that the government informed the United States Magistrate that it would provide Jencks Act material to Ricks on the Friday afternoon preceding the trial. The government then failed to produce the material. Ricks claims that access to the Jencks Act statements was essential to his defense because he had no other way to determine what the eye witnesses to the bank robbery stated to the FBI. Ricks

alleges that the government made the decision not to use certain material in preparing its case for trial so that it would not have to disclose that material. By intentionally not showing certain statements to witnesses, but using those statements instead as a basis for witness interviews, Ricks argues that the government effectively circumvented the Jencks Act and deprived him of the opportunity to learn of possible inconsistencies in the statements. The district court found that the statements did not qualify as Jencks Act statements.

A Jencks Act statement, as defined by Congress, is a written statement made by a witness and signed "or otherwise adopted or proved by him." 18 U.S.C. § 3500(e). The statements which Ricks requested consisted of FBI memoranda of witness interviews. The prosecutor informed the district court that the witnesses never adopted the memoranda as their own statements. In *Palermo v. United States*, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959), the Supreme Court clarified the legislative intent of the Jencks Act. The *Palermo* Court held that Congress intended to make certain that "only those statements which could properly be called the witness' own words should be made available to the defense for purposes of impeachment." *Palermo v. United States*, 360 U.S. at 352, 79 S.Ct. at 1224. Although appellate courts have encouraged the practice of pretrial disclosure of Jencks Act material in order to expedite discovery, the practice is only encouraged where the material in question is properly subject to the Jencks Act. Ricks has not demonstrated that the statements in this case fell within the definition of Jencks Act materials; consequently, we affirm on this issue.[1]

### G. Double Jeopardy Claim

Ricks's final contention is that the district court subjected him to double jeopardy in violation of the fifth amendment by sentencing him to two consecutive terms of imprisonment for the two counts on which he was convicted. He contends that the sentencing constitutes reversible error because under the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the offenses are the same for purposes of double jeopardy. He argues that the elements of Count II are included in the elements of Count I and that therefore, his sentence amounts to multiple punishments for the same offense.

We must determine whether the district court imposed a sentence within the limits authorized by Congress. *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). The double jeopardy clause of the fifth amendment prohibits a sentencing court from prescribing greater punishment than the legislature intended. *Missouri v. Hunter*, 459 U.S. at 366, 103 S.Ct. at 678. In *Missouri v. Hunter*, the Supreme Court held that cumulative punishments may be imposed where a defendant is convicted of violating two statutes, and where the statutes proscribe the same conduct—if the legislature intended such a result. The *Hunter* Court explained that the *Blockburger* test, which prohibits cumulative punishment for the same offense, is not controlling where a clear indication of contrary legislative intent is evident. *Missouri v. Hunter*, 459 U.S. at 367, 103 S.Ct. at 678. The language of 18 U.S.C. § 924(c) makes it clear that Congress intended section 924 to impose an additional five-year penalty on anyone convicted of a violent crime who uses or carries a firearm in the commission of that crime.[2] The consecutive sentences are per-

---

**1.** The appellant urges that we send a message to the United States Attorneys in this circuit that we consider handling of witness statements in such a manner as to avoid the possibility of creating Jencks Act statements unfair. We decline to do so. We do note, however, that many districts in this circuit have successfully handled the pretrial and discovery portions of criminal proceedings under a plan which calls for the prosecutor to turn over the government's file in

most cases. This type proceeding is called The Omnibus Plan. Ineffective assistance of counsel claims, trial by ambush, and Jencks Act problems are virtually eliminated under such a plan.

**2.** Section 924(c) states:
Whoever, during and in relation to any crime of violence, including a crime of violence which provides for an enhanced punishment if committed by the use of a deadly or danger-

missible in this case because Congress specifically authorized the cumulative punishment in section 924(c). *Missouri v. Hunter*, 459 U.S. at 366, 103 S.Ct. at 678. In light of the express language of section 924(c), we affirm the sentence imposed by the district court.

Finding no error, we affirm.

AFFIRMED.

ous weapon or device, for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence, be sentenced to imprisonment for five years. In the case of his second or subsequent conviction under this subsection such person shall be sentenced to imprisonment for ten years. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under the subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence in which the firearm was used or carried. No person sentenced under this subsection shall be eligible for parole during the terms of imprisonment imposed herein.