849 F.2d 1474
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Harry Louis SMITH, II, Defendant-Appellant.
 No. 87-5500.
 United States Court of Appeals, Sixth Circuit.
 June 23, 1988.
 
 Before KEITH and WELLFORD, Circuit Judges, and JULIAN A. COOK*, Jr., District Judge.
 PER CURIAM.
 
 
 1
 In this appeal from his conviction for various offenses relating to a robbery and murder, defendant Harry Smith asserts ineffective assistance of counsel and double jeopardy as grounds for reversal. Smith asserts a double jeopardy violation in respect to his conviction and sentence under both 18 U.S.C. Sec. 2118 and 18 U.S.C. Sec. 924(c). We affirm the district court in all respects.
 
 
 2
 On the morning of November 22, 1986 two men entered Weber's Pharmacy in Bellevue, Kentucky and announced it was being robbed. While one robber was emptying narcotics into a paper bag, Mr. Weber produced a gun, told the men to leave, then shot one man as they struggled. Weber killed Charles Lake with his gun but was mortally wounded by the other robber, who fled.
 
 
 3
 Harry Smith was charged with being the other robber and was indicted for the robbery and murder of the pharmacist along with Jackie Warren, the driver of the getaway car. Specifically the two were charged with theft of a controlled substance resulting in murder, 18 U.S.C. Sec. 2118; conspiracy to obtain controlled substances through robbery, 18 U.S.C. Sec. 2118; carrying a firearm in furtherance of a crime of violence, 18 U.S.C. Sec. 924(c); and intent to possess narcotics for the purposes of distribution, 21 U.S.C. Sec. 841. Warren pled guilty and testified against Smith. Smith pled not guilty and relied on an alibi defense.
 
 
 4
 At trial the government produced the testimony of David Grome, a clerk at Weber's Pharmacy who witnessed the robbery and murder. He testified that Weber was killed by a man wearing a red jacket, but did not identify Smith as the robber. Warren testified that Charles Lake forced him to drive the getaway car that day to pay a debt Warren owed him. He stated Smith was in on the robbery and was wearing a red Ohio State windbreaker when he went into the drug store. Warren further stated Smith admitted he had shot Weber while in the store. Warren also claimed Smith told him to get rid of the gun, which he did by throwing it in the Ohio River.
 
 
 5
 John Beatty, a salvage expert, searched for and found a revolver near the place Warren said he disposed of the murder weapon. Warren identified the gun as the one he threw away. Also identifying the gun was Brian Blanch, who stated he had seen the gun in Smith's possession the night before the incident.
 
 
 6
 The government had difficulty with one of their witnesses, Shay Lake, Charles Lake's sister, who testified that she helped disguise her brother's features before he went to rob the drug store, and that Smith was there at the time. She also testified that after the robbery she wiped off the green paint used to disguise the license plate on Smith's mother's car--the car used in the robbery. On further examination, however, Shay began to recant her testimony that the defendant admitted to killing the druggist. Of her signed statement she claimed "most of it's a lie" and "I can't go through with this." The court took a recess and suggested she consult an attorney before testifying further. When her testimony resumed the next day, Shay stated that she had told FBI agents that Smith admitted shooting Weber, but she did not intend that statement to become part of her sworn statement. She also stated the defendant's mother, Shirley Smith, asked her to swear that Smith had been home during the time of the robbery.
 
 
 7
 Leanne Lake corroborated much of Shay's testimony by stating Smith was present at the Lake home while the robbery preparations were being made. She also testified that Smith's mother told her that Smith had participated in the robbery.
 
 
 8
 Smith's defense in this case was alibi. He produced the testimony of his mother, his brother and Karen McKenzie, a close friend, that he was at home the day of the robbery. He also denied owning the gun produced as the murder weapon.
 
 
 9
 The jury found Smith guilty on all counts and he was sentenced to life imprisonment, a term of ten years, a term of five years, and a term of twenty years, all to be served consecutively. This appeal followed.
 
 I. INEFFECTIVE ASSISTANCE OF COUNSEL
 
 10
 Smith's first claim of error is that he was denied effective representation by his trial counsel. In support of this allegation he points to a number of pretrial and trial errors, a principal one being a charge that his attorney failed to interview or call Julie McKenzie as an additional alibi witness (and the only one of two which would not have been Smith's relative). Other charges relate to the failure to object to the court's suggestion that Shay Lake consult an attorney once she began to recant her prior testimony, and the failure to object to the proceedings when Karen McKenzie, a defense witness, was allegedly arrested and handcuffed prior to trial in the presence of a jury venire. These challenges to the performance of defendant's trial counsel were not made to the district court.
 
 
 11
 We do not normally address an issue not first presented to the district court. The claim of ineffective assistance of counsel may, of course, be addressed by the district court in a collateral proceeding pursuant to 28 U.S.C. Sec. 2255. This is the normal and better practice, as recognized in United States v. Hill, 688 F.2d 18, 21 (6th Cir.), cert. denied, 459 U.S. 1074 (1982), wherein we stated: "[t]he allegations of ineffective assistance of counsel, raised by the defendant in his pro se brief, are not properly before the court at this time. An adequate postconviction procedure is afforded by 28 U.S.C. Sec. 2255 for developing a factual record to support these allegations, if they can be so supported. That procedure obviates the deciding of the issue without opportunity for all parties to unfold the facts." Id. at 21-22 (quoting United States v. Gray, 464 F.2d 632, 634 n. 1 (8th Cir.1972)). See also United States v. Willis, 804 F.2d 961 (6th Cir.1986) (even if court had jurisdiction to hear appeal from denial of a Rule 35 motion, incompetent counsel claim could not be considered before being presented to the district court). We conclude that this approach is the appropriate one because many of Smith's claims are largely undeveloped in the record. For example, there is no evidence supporting his contention that Karen McKenzie was seized by police or that any jurors saw this. There is no evidence here that Julie McKenzie would have been a relevant witness to Smith's defense. As the government notes, there is no record of her being present at all at the relevant times. We therefore will not consider this issue at this point. The district court may make appropriate findings of fact if a proper claim is subsequently presented. See United States v. Rad-O-Lite of Philadelphia, Inc., 612 F.2d 740 (3d Cir.1979).
 
 II. DOUBLE JEOPARDY
 
 12
 In a pretrial motion Smith claimed it was a violation of double jeopardy to give him an additional five-year sentence under Sec. 924(c) when he already earned an enhanced sentence (life) for carrying a dangerous weapon in violation of 18 U.S.C. Sec. 2118(c)(2). In support of his claim, Smith relied on Busic v. United States, 446 U.S. 398 (1980).
 
 
 13
 Busic and Simpson v. United States, 435 U.S. 6 (1978), held that a defendant could not be additionally sentenced under Sec. 924 when the underlying crime already imposed an enhanced penalty for carrying a weapon. It is clear that these decisions were not based on constitutional grounds, as double jeopardy demands only that the sentence not exceed what Congress intended. Garrett v. United States, 471 U.S. 773 (1985); Missouri v. Hunter, 459 U.S. 359, 366 (1983). Instead, these decisions concluded that Congress did not intend to impose double punishment.
 
 
 14
 Smith's argument ignores developments occurring since Busic and Simpson were decided. The amendments to the Crime Control Act of 1984 specifically state the Congress intends to impose the additional penalty, notwithstanding any enhanced sentence earned for carrying a firearm in violation of other statutes. As other courts have recognized, the amendments were made primarily to negate the effect of Busic and Simpson. See S.Rep. No. 225, 98th Cong., 2d Sess. 312-24 reprinted in 1984 U.S. Code Cong. & Admin. News 3490-91 n. 8; United States v. Chalan, 812 F.2d 1302, 1315 (10th Cir.1987). Thus, all courts facing the question since the amendments to Sec. 924(c) have upheld additional punishment. See, e.g., United States v. Harris, 832 F.2d 88 (7th Cir.1987); United States v. Shavers, 820 F.2d 1375 (4th Cir.1987); United States v. Ricks, 817 F.2d 692 (11th Cir.1987); United States v. Doffin, 791 F.2d 118 (8th Cir.), cert. denied, 107 S.Ct. 210 (1986); Chalan, supra; United States v. Springfield, 829 F.2d 860, 865 (9th Cir.1987).
 
 
 15
 Because the intent behind the statute is clear, we reject Smith's challenge here because double jeopardy concerns are satisfied. See Garrett v. United States and Missouri v. Hunter, supra.
 
 
 16
 We accordingly AFFIRM the judgment of the district court, and we decline, for the reasons indicated, to pass upon the ineffective assistance of counsel claim.
 
 
 
 *
 THE HONORABLE JULIAN A. COOK, JR., United States District Court for the Eastern District of Michigan, sitting by designation