[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15621

_____

D.C. Docket No. 1:10-cr-00251-TWT-AJB-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CATARINO MORENO,
ISRAEL SALGADO,
a.k.a. Paisa,
ARTIS LISBON,
a.k.a. BeBe,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(March 27, 2014)

Before CARNES, Chief Judge, HULL and COX, Circuit Judges.

PER CURIAM:

In 2009 the Drug Enforcement Administration began investigating a Mexican drug trafficking organization that moved cocaine and heroin into Atlanta, distributed it to street-level dealers, and then smuggled the cash into Mexico. The investigators used wiretaps, video surveillance, and other investigative techniques to identify the organization's members, including Catarino Moreno and Artis Lisbon. The two played different roles in the organization.[1] Moreno was a trucker who used a hidden compartment in the cabin of his semi-trailer truck to transport cash from the organization's drug sales. Lisbon was part of the organization's distribution chain, paying for cocaine and heroin delivered by his coconspirators and moving the drugs down the line to lower-level distributors.

In 2010 a federal grand jury indicted eleven members of the organization, charging them with different conspiracy, drug, and money laundering offenses. Three of those eleven defendants went to trial: Moreno, Lisbon, and Israel Salgado. After a joint, nine-day jury trial, all three were convicted.

Moreno was tried on three charges: (1) conspiracy to distribute drugs, in violation of 21 U.S.C. §§ 841(b)(1)(A)(i) and 846; (2) conspiracy to launder money, in violation of 18 U.S.C. § 1956(h); and (3) transporting drug proceeds to help launder those proceeds, in violation of 18 U.S.C. §§ 1956(a)(1)(i),

---

[1] Because both defendants challenge the sufficiency of the evidence against them, we takes these facts from the evidence at trial, construed in the light most favorable to their convictions, see United States v. Browne, 505 F.3d 1229, 1253 (11th Cir. 2007).

2

(a)(1)(B)(i), and 2.  The government's primary evidence against him was the testimony of the two Georgia State Troopers who, after being notified by the federal investigators that Moreno was transporting drug proceeds, pulled him over for a traffic violation and searched his truck.  They described how they stopped Moreno, got his permission to search his truck, and uncovered $550,822 hidden in a secret compartment in the cab.  They also described Moreno's incriminating behavior during the stop and the search.  The government also presented evidence showing that Moreno had been in direct contact with members of the conspiracy to coordinate his transport of the cash.  The jury found Moreno guilty of the two money laundering counts and not guilty of the drug distribution conspiracy count.

Lisbon was tried on three charges:  (1) conspiracy to distribute drugs, in violation of 21 U.S.C. §§ 841(b)(1)(A)(i) and 846; (2) possession with intent to distribute at least one kilogram of heroin on or about August 17, 2009, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), and 18 U.S.C. § 2; and (3) possession with intent to distribute at least five kilograms of cocaine on or about May 21, 2010, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i), and 18 U.S.C. § 2.  The government presented evidence that, in August 2009, Lisbon purchased several kilograms of heroin from an unnamed third-party supplier in a deal brokered by his codefendant Salgado.  It also introduced wiretapped conversations and testimony showing that, in May 2010, Lisbon received 10 kilograms of cocaine from the

3

organization.  After hearing that and other evidence, the jury found Lisbon guilty on all three counts.

This opinion deals with Moreno's and Lisbon's appeals.[2]

## I.

Moreno challenges the district court's denial of his motion to exclude evidence of his 1999 Texas conviction for second-degree felony possession of marijuana, which resulted from Moreno having transported 177 pounds of marijuana hidden in the trailer of his truck in return for a payment of $3,750.  The district court admitted the evidence of the conviction for that prior crime under Federal Rule of Evidence 404(b) because it was relevant to Moreno's knowledge about and intent to join the drug distribution and money laundering conspiracies.

We do not doubt the correctness of the district court's ruling given the circumstances, but we need not go into it in detail because any conceivable error was harmless given the overwhelming evidence of Moreno's guilt.  See United States v. Hosford, 782 F.2d 936, 939–40 (11th Cir. 1986).  The evidence at trial showed, among other things, that in April and May 2010 Moreno frequently phoned one of the coconspirators responsible for coordinating the truck drivers smuggling the organization's cash.  When Moreno was pulled over, he lied to the

---

[2] Salgado was also tried and convicted on three charges.  We have already issued an opinion affirming his convictions but vacating and remanding his sentence.  See United States v. Salgado, — F.3d —, No. 12-15691, 2014 WL 988537 (11th Cir. Mar. 14, 2014).

troopers about his travel plans.  The hidden compartment in his truck's cabin

contained twenty shrink-wrapped bundles of cash, marked 1 to 20.  When the

trooper searching the cabin emerged holding one of those bundles — without any

of the bills showing — Moreno moaned, "Ugh, he found it."  The other trooper,

who did not know what was in the bundles, asked, "found what?"  And Moreno

replied, "money."  The cash from the hidden compartment totaled $550,822.

Moreno did not offer any evidence of his own.  In light of all the evidence against

Moreno, any error by the district court in admitting evidence of the 1999

conviction was harmless.[3]

## II.

Lisbon challenges the district court's denial of his motion to suppress the

evidence that federal agents seized from his condominium and car while executing

a warrant for his arrest on June 11, 2010.[4]  Lisbon sought to suppress:  (1) a pair of

---

[3] Moreno also challenges the sufficiency of the evidence presented at trial, but that challenge is frivolous.  The evidence summarized above, as well as the testimony of DEA Case Agent David Noe and others, which we have not recounted, provided sufficient evidence to establish Moreno's guilt on the two money laundering charges.

[4] Lisbon also contends that:  (1) the prosecution introduced false testimony from one of its witnesses, (2) the district court abused its discretion by permitting the government's case agent to impermissibly bolster another government witness' testimony, (3) the district court abused its discretion by admitting evidence of Lisbon's uncharged money laundering offense, (4) the district court abused its discretion by admitting evidence of the GPS data from Lisbon's phones, (5) the district court abused its discretion by permitting the government's case agent to offer his opinion that Lisbon was the "Bebe" referred to on wiretapped conversations, (6) there was insufficient evidence to support the forfeiture verdict, and (7) the prosecutor made improper comments during the closing argument of the forfeiture proceeding.  None of those contentions has merit or merits discussion.

5

keys taken from his pants, (2) two cell phones taken from his coffee table, and (3) his wallet and a set of keys taken from the console of his car.

On June 11, 2010, several federal agents went to Lisbon's condominium with a warrant for his arrest, but without a search warrant. Lisbon answered the door in his underwear and identified himself as Artis Lisbon. One of the agents told him that they had a warrant for his arrest, and Lisbon asked if he could get dressed. The agents agreed, performed a security sweep of the condominium to make sure no one else was present, and then escorted Lisbon to his bedroom. During the sweep, an agent noticed two cell phones sitting on the coffee table. When an agent asked Lisbon for consent to search the condominium further, he refused, telling them they would have to get a search warrant.

In the bedroom, Lisbon picked out a shirt, pants, and a pair of shoes. The agents searched the clothes before handing them to him to put on, and during that search found and removed from the pants a set of keys. An agent asked Lisbon for identification so that the booking officers could verify his personal information. Lisbon said that his driver's license was in the console of his car. But the agents never asked for permission to search the car, nor did Lisbon say that they could. As the agents and Lisbon were leaving the condominium, Lisbon asked if he could take his cell phones on the coffee table. In response, an agent seized the two phones as evidence.

6

As they walked out of the condominium and through the complex's gated parking area, Lisbon pointed out his car parked in the space reserved for his unit, but did not say that the agents could search it. An agent used the keys taken from Lisbon's pants to open the car. Inside the center console, the agent found Lisbon's wallet, containing his driver's license. He also found another ring of keys, which included keys to several safety deposit boxes. The agent seized the wallet and the keys.

Lisbon filed a motion to suppress all of the seized items. The magistrate judge held a hearing and issued a report and recommendation that the motion be denied. See United States v. Lisbon, 835 F. Supp. 2d 1329, 1360–67 (N.D. Ga. 2011). Over Lisbon's objection, the district court adopted the report and recommendation and denied the motion. We review the factual findings for clear error, and the legal conclusions de novo. United States v. Newsome, 475 F.3d 1221, 1223–24 (11th Cir. 2007).

Lisbon contends that the agents' search of his pants pockets was unreasonable. When law enforcement officers arrest a suspect, they may search for weapons and evidence in "the grab area within the suspect's immediate reach." United States v. Bennett, 555 F.3d 962, 966 (11th Cir. 2009). A search limited to the suspect's grab area "is always allowed" incident to a lawful arrest, even if the officers have no search warrant and no reason to believe there is evidence or a

7

weapon in the area.  United States v. Standridge, 810 F.2d 1034, 1037 (11th Cir. 1987).  Putting on the pants he picked out would have put everything in the pockets of those pants within Lisbon's reach and in his grab area, which permitted the agents to search the pockets before handing the pants to him.  See United States v. Ricks, 817 F.2d 692, 696 (11th Cir. 1987) ("[T]he jacket, while not initially in [the defendant's] grab area, became subject to a legitimate search when the agent handed it to [the defendant], thus placing it within [his] grab area . . . .").

Lisbon also contends that the agents lacked probable cause to seize the two cell phones from his coffee table.  We need not review this issue in detail because, even if it was error, the district court's refusal to suppress the two cell phones was harmless.  See United States v. Rhind, 289 F.3d 690, 694 (11th Cir. 2002) (applying harmless error review to suppression rulings).  The government points to the substantial evidence against Lisbon and argues that none of it was tainted by the allegedly unlawful seizure of the cell phones.  Lisbon fails to counter with any theory explaining how the seizure of the cell phones made any difference in light of all the other evidence against him, or even considered by themselves.  The trial transcript does not even mention the cell phones or any information found on them.  There is no indication the jury knew anything about them.  And Lisbon has not pointed to anything indicating that the seizure of the two phones was used to obtain search warrants that were later issued and that did lead to additional evidence.  So

8

the seizure of the cell phones, and any error in not granting Lisbon's motion to suppress them, was utterly harmless.

Finally, Lisbon challenges both the search of his car and the seizure of his wallet and keys from its center console. The agents could search the car's console without a warrant so long as: (1) the car was "readily mobile," and (2) they had "probable cause to believe that it contain[ed] contraband or evidence of a crime." United States v. Lanzon, 639 F.3d 1293, 1300–01 (11th Cir. 2011); see also United States v. Strickland, 902 F.2d 937, 942 (11th Cir. 1990) ("A vehicle search conducted pursuant to probable cause may include any item and compartment in the car that might contain the object of the search."). The car was readily mobile: agents had observed it parked outside one of the houses the organization used for drug deals, and witnesses reported seeing Lisbon driving it. There is no evidence at all that it was not fully operational.

Lisbon argues that the fact the car was parked inside a gated lot meant it was secure and thus a warrant was required. We disagree. "The requirement of mobility is satisfied merely if the automobile is operational." United States v. Lindsey, 482 F.3d 1285, 1293 (11th Cir. 2007) (quotation marks omitted); see also United States v. Birdsong, 982 F.2d 481, 483 (11th Cir. 1993) (explaining that "officers may conduct the warrantless search even after the vehicle is impounded and in police custody"). The automobile exception has no requirement beyond

9

ready mobility and probable cause.  See United States v. Watts, 329 F.3d 1282, 1286 (11th Cir. 2003) (explaining that ready mobility and probable cause are the "only two questions that must be answered in the affirmative before authorities may conduct a warrantless search of an automobile").

The agents also had probable cause to believe that there was evidence in the console of the car.  Wiretapped conversations showed that Lisbon was a major purchaser of cocaine and heroin, and a government informant had told the agents that Lisbon used the car for drug trafficking business.  That was enough to provide a fair probability that the console contained evidence of his drug trafficking.

The agents could seize the wallet and the keys from the car's console if they had probable cause to believe that the items would turn out to be, or lead to, evidence or contraband.  See United States v. Virden, 488 F.3d 1317, 1322 (11th Cir. 2007) (quotation marks omitted); Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543 (1983) (explaining that probable cause requires the facts available to the officer to support a reasonable belief that the seized "items may be contraband or stolen property or useful as evidence of a crime").  The agents knew, through wiretaps and informant interviews, that Lisbon was a major player in the organization's distribution network.  They also were set to execute a search warrant that same day at the drug house where Lisbon's car had been parked earlier.  Given those facts, there was a fair probability that his wallet and keys

10

could serve as evidence linking him to the house and items found in it or lead to such evidence.  See United States v. House, 604 F.2d 1135, 1142 (8th Cir. 1979) (upholding the seizure of, among other things, the suspect's keys and wallet because they provided  evidence that drugs and cash were in his possession).

For those reasons, we conclude that the district court did not err in denying Lisbon's motion to suppress.

### III.

The convictions of Catarino Moreno and Artis Lisbon are **AFFIRMED.**