567 So.2d 581 (1990)
STATE of Louisiana
v.
Mark WALKER.
No. 89-K-0572.
Supreme Court of Louisiana.
September 6, 1990.
*582 J. Michael Small, Celia R. Cangelosi, for Mark Walker defendant-applicant.
William J. Guste, Jr., Atty. Gen., Charles F. Wagner, Dist. Atty., Clifford R. Strider, III, Asst. Dist. Atty., for State plaintiff-respondent.
LEMMON, Justice[*].
The principal issue before this court is whether the trial court properly quashed defendant's indictment because of the non-malicious conduct of an assistant district attorney who, without informing defendant he was a suspect in a criminal investigation and without defendant's attorney's knowledge or consent, obtained information and documents from defendant which allegedly led to his indictment.
In June of 1986 the Rapides Parish Police Jury awarded a contract to CLD Enterprises, Inc. to renovate the Cotile recreational area owned and operated by the Jury. Defendant was CLD's secretary-treasurer, but owned no stock in the corporation. The contract called for stage payments by the Police Jury to CLD during the progress of the construction.
In October of 1986 CLD's officers, including defendant, were subpoenaed to testify before an East Baton Rouge Parish grand jury, which was investigating the insurance company that had provided the performance bond to CLD on the Cotile contract in Rapides Parish. Defendant and the other officers consulted CLD's attorney, Eugene Cicardo, who determined that the investigation focused on the insurance company and that none of CLD's officers were targets of the investigation. The officers testified before the grand jury under a grant of immunity obtained by Cicardo.
In the next two months several subcontractors filed liens because CLD had failed to pay them for labor performed and materials furnished on the Cotile contract. Work on the project stopped in late December, but resumed sporadically after the liens were satisfied and cancelled. However, other liens were soon filed, and the Police Jury put CLD in default in April, 1987.
In the meantime Dexter Ryland, defendant's close friend who was an assistant district attorney and the legal adviser to the Police Jury in civil matters, had begun monitoring the construction project after the first liens were filed. Ryland discussed the project with CLD officers on a regular basis.
On February 27, 1987, defendant and Ryland, who had represented defendant previously in unrelated legal matters, met for lunch, as they did periodically. While the testimony of the parties conflicted as to who initiated the conversation about the Cotile project and what was said, they *583 agreed that Ryland asked defendant where the money paid to CLD by the Police Jury had gone. According to defendant, Ryland informed him during the conversation that there could be criminal as well as civil consequences if the funds CLD received from the Police Jury had been misapplied. According to Ryland, there was no criminal proceeding nor even any thought of a criminal investigation at the time. In any event defendant delivered CLD's records of payments on the Cotile job to Ryland a week after the luncheon meeting.
Ryland did not notify attorney Cicardo before talking to defendant about the project, although Ryland knew that Cicardo had represented defendant in the East Baton Rouge Parish grand jury proceedings which were incidentally related to the Cotile project.
In April of 1987, after CLD had been put in default, the district attorney of Rapides Parish decided to conduct a criminal investigation into CLD's contract with the Police Jury. Because of Ryland's friendship with defendant, the investigation was conducted by assistant district attorney Jay Buck. During the investigation Buck subpoenaed all of CLD's records concerning the Cotile project. Defendant was subpoenaed to testify before the grand jury, but on Cicardo's advice refused to testify.
Defendant and other CLD officers were indicted by the grand jury on June 11, 1987 on charges of knowingly failing to apply the funds received from the Police Jury to payments for labor and materials under the contract, in violation of La.Rev.Stat. 14:202.[1] Defendant filed a motion to quash the indictment on the basis of prosecutorial misconduct, alleging that the indictment was obtained with evidence secured by assistant district attorney Ryland in discussions with defendant when Ryland knew that defendant was represented by counsel for the very matter which was discussed. The motion asserted that this prosecutorial misconduct (1) violated defendant's right to counsel under the federal and state constitutions and (2) violated the Rules of Professional Conduct.[2] The motion further stated that quashing the indictment was the only remedy available to vindicate defendant's rights because the statutory secrecy of the grand jury proceedings prevented defendant's determining the impact of the misconduct on the grand jury's decision to indict him.
The prosecutor opposed the motion, asserting that defendant's constitutional right to counsel had not attached at the time of his conversation with Ryland. As to the alleged violation of disciplinary rules, the prosecutor argued that Ryland did not know defendant was then being represented by Cicardo or any other attorney as to any civil or criminal matters arising from the construction project.
At the hearing on the motion the prosecutor also attempted to show that quashing the indictment was an inappropriate remedy because the evidence obtained by Ryland either was not presented to the grand jury or was otherwise readily obtainable by subpoena. Defense counsel objected to the prosecutor's questions as to what evidence was presented to the grand jury, urging the secrecy of the grand jury proceeding. The trial court maintained the objection, stating that such questions invaded the province of the grand jury. However, Buck was allowed to testify that he had obtained all of CLD's records by subpoenas *584 duces tecum and had presented unspecified documents to the grand jury.
The trial judge granted the motion and quashed the indictment. Although finding that Ryland acted without any malice or intent to deceive defendant and may not have specifically known that Cicardo was representing defendant on all matters relating to the Cotile project, the judge concluded that Ryland nevertheless should not have discussed the project with defendant without determining whether defendant was represented by counsel or advising him to consult an attorney. The court further concluded that the seemingly innocent conversation between friends resulted in a violation of defendant's constitutional right to counsel.
The court of appeal reversed. 539 So.2d 765. Citing Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), and State v. McDonald, 387 So.2d 1116 (La.1980), the intermediate court reasoned that defendant's right to counsel had not attached in February, 1987 because adversarial proceedings had not yet been initiated.[3] The court further reasoned that Ryland did not violate any ethical duty to defendant because defendant, while by his own admission being fully aware of the possibility of criminal exposure, freely and voluntarily discussed the matter with Ryland and furnished him the corporate records. The court further noted that quashing the indictment was not an appropriate remedy for a violation of the right to counsel.
We granted certiorari. 545 So.2d 1044.
Defendant urges this court to adopt a rule that evidence obtained by the state by virtue of an attorney's violation of the Rules of Professional Conduct, just like evidence obtained by the state in violation of the constitutional prohibition against illegal searches and seizures, should be excluded in a criminal trial. Defendant points out that this court has often recognized that the Rules of Professional Conduct have the force and effect of substantive law and has recently set aside a contract on the basis of an attorney's violation of ethical rules in obtaining the contract. See Succession of Cloud, 530 So.2d 1146 (La.1988) (a lawyer's violation of disciplinary rules by acquiring a proprietary interest in a client's cause of action, other than by means of a reasonable contingency fee contract, entitles the client to avoid the contract conveying the mineral interest).
The gravamen of defendant's motion was that he was indicted on the basis of evidence which was illegally obtained in violation of his constitutional right to counsel and in violation of ethical standards. Significantly, this is not a motion to suppress the challenged evidence, but rather is a motion to quash the indictment.
Generally, a defendant does not have a constitutional right to challenge an indictment by asserting the illegality of the evidence that was presented to the grand jury. In Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), the Court denied a challenge to an indictment allegedly based on hearsay evidence.[4] Noting that to permit such a challenge would allow the accused in every case to "insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury", the Court concluded that such a rule would result in "interminable delay but add nothing to the assurance of a fair trial". 350 U.S. at 363-64, 76 S.Ct. at 408-09. The Court accordingly held that a constitutional *585 challenge to the evidence supporting a grand jury indictment was generally unavailable, observing that "an indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits". 350 U.S. at 363, 76 S.Ct. at 408. See generally 2 W. LaFave & J. Israel, Criminal Procedure § 15.4 (1984).
Later, in United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), the Court rejected a challenge to an indictment allegedly based on evidence obtained through an unconstitutional search and seizure.[5] The Court reasoned:
The grand jury's sources of information are widely drawn and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence; or even on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination....
414 U.S. at 344-45, 94 S.Ct. at 618 (citations omitted).
A few decisions have recognized exceptions to the general rule, especially when the challenge to the grand jury indictment was based on prosecutorial misconduct which occurred before the grand jury.[6] These decisions reflect the reasoning that the prosecutor should give due deference to the grand jury's status as an independent body and should not attempt to influence the grand jury by statements or arguments that would be impermissible at trial. Standards for Criminal JusticeThe Prosecutorial Function § 3-3.5 (2d ed. 1980). In the decisions constituting exceptions to the general rule, the indictment, although valid on its face, was returned by a grand jury whose integrity as an independent body had been impaired because of the prosecutorial misconduct and which therefore was not unbiased, and the court concluded that the indictment should not form the basis for requiring a defendant to stand trial. However, most decisions have denied motions to dismiss indictments based on prosecutorial misconduct because there was no actual prejudice or adverse impact sustained by the defendant, or because there *586 was no significant infringement on the grand jury's ability to exercise independent judgment.[7]
An analysis of the decisions of the federal courts and of other jurisdictions leads to the conclusion that indictments generally are not dismissed merely because of prosecutorial misconduct in presenting inadmissable evidence to the grand jury. To warrant dismissal of an indictment the prosecutorial misconduct must be of such a nature as to mislead or unfairly affect the integrity of the grand jury as an independent and unbiased body.
La.Code Crim.Proc. art. 442 prohibits the quashing of an indictment on the ground that the indictment was based on illegal evidence. Nevertheless, this court has recognized that a defendant should not be required to stand trial on an indictment obtained by prosecutorial misconduct which misled or unfairly affected the integrity of the grand jury as an independent and unbiased body. See State v. Smalling, 240 La. 915, 125 So.2d 409 (1960) (the prosecutor's compelling the defendant to testify in front of the grand jury relative to the crimes charged against him justifies quashing the indictment); see also State v. Harrell, 228 La. 434, 82 So.2d 701 (1955). However, the administrative disadvantages of allowing defendants generally to challenge the evidence supporting grand jury indictments (thereby opening grand jury transcripts for inspection and permitting minitrials of indictments) usually outweigh the value of eliminating an unwarranted prosecution at the screening stage, especially in the absence of prejudice to the defendant.
The present case differs from Smalling and Harrell in that those decisions involved misconduct which clearly produced the evidence resulting in the indictment, which occurred before the grand jury itself, and which resulted in obvious prejudice. Moreover, there was no necessity in those cases for inspection by the defendant of the grand jury transcript, inasmuch as his own testimony at the hearing on the motion established the constitutional violation, and there was no necessity for a minitrial of the indictment. Finally, those cases were decided prior to the development of the present day exclusionary policy, whereas under modern criminal procedure an accused can adequately protect himself against the use of objectionable evidence at his trial without the court's having to retry every indictment on a motion to quash.
The ultimate issue in a motion to dismiss an indictment on the basis of prosecutorial misconduct is whether the proved misconduct warrants such a drastic remedy. The remedy for prosecutorial misconduct should generally be tailored to the injury suffered from the misconduct. See United States v. Morrison, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981) (a government agent's unsuccessful attempt to obtain incriminating information from the accused, without the presence or knowledge of his counsel, does not warrant dismissing the indictment with prejudice because *587 the alleged misconduct had no adverse impact on the accused).[8] Absent demonstrable prejudice, dismissal of the indictment is plainly an inappropriate remedy for misconduct by the prosecutor's attempting to obtain evidence illegally. Id. at 366, 101 S.Ct. at 669. The remedy under such circumstances is limited to denying the prosecution the fruits of its transgression. Id. at 367, 101 S.Ct. at 669.
In the present case, the remedy of quashing the indictment is not justified either on constitutional grounds or under this court's supervisory power to dismiss indictments in order to prevent prosecutorial impairment of the grand jury's independent role. See United States v. Fields, 592 F.2d 638, 647 (2d Cir.1978), cert. denied, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284. There is no suggestion that the grand jury was deceived or misled by any misconduct before the jury on the part of the prosecutor. As to any misconduct which may have occurred in Ryland's general discussion of the CLD contract with defendant, there was no showing of prejudice from any alleged violation of disciplinary rules. There was no indication that any evidence obtained from defendant was used in the investigation or the grand jury proceeding. It was defendant himself who, after complaining that he was indicted on improperly obtained evidence, strenously resisted the prosecutor's efforts to determine whether the evidence obtained by Ryland was presented to the grand jury.[9] Furthermore, the prosecutor had the right to (and did) subpoena the very documents that defendant voluntarily surrendered to Ryland. Irrespective of any violation of ethical rules, the prosecutor would inevitably have come into possession of CLD's records for presentation to the grand jury. Additionally, the prosecutor could have instituted (and still can institute) this proceeding by bill of information, rather than grand jury indictment, in which case defendant would be in the same position he is now of having to challenge, by means of a motion to suppress, any evidence that may be used at trial.[10]
We accordingly pretermit deciding whether evidence may be suppressed if it was obtained by an assistant district attorney from a defendant, while represented by counsel, in an unauthorized discussion of "the subject of the representation". Rules of Professional Conduct Rule 4.2 (1987). In the present case the general conversation between Ryland and defendant may have resulted in defendant's surrender of some of CLD's records, but insofar as is shown in this record, it did not produce any inculpatory evidence that was not otherwise readily obtainable or any improper evidence that unfairly affected the independent role of the grand jury which indicted defendant.
Accordingly, the judgment of the court of appeal is affirmed.
MARCUS, J., concurs and assigns reasons.
DENNIS, J., concurs.
MARCUS, Justice (concurring).
I agree that quashing of the indictment was plainly inappropriate. Clearly, defendant's sixth amendment right to counsel had not attached at the time that Ryland conferred with defendant and the records were delivered. Even assuming that Ryland violated the Rules of Professional Conduct prohibiting contact between a lawyer and a party represented by another attorney, I am doubtful that suppression of the evidence would be an appropriate sanction *588 where no constitutional violation occurred. Accordingly, I respectfully concur.
NOTES
[*] Retired Chief Justice John A. Dixon, Jr. participated in this case, having been a member and Chief Justice of this court when the case was orally argued and taken under advisement.
[1] La.Rev.Stat. 14:202 provides in part:

No person, contractor, subcontractor, or agent of a contractor or subcontractor, who has received money on account of a contract for the construction, erection, or repair of a building, structure, or other improvement, including contracts and mortgages for interim financing, shall knowingly fail to apply the money received as necessary to settle claims for material and labor due for said construction or under said contract.
[2] The applicable rule is Rule 4.2, which provides:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so. A lawyer shall not effect the prohibited communication through a third person, including the lawyer's client.
[3] See also Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (the right to counsel attaches at the initiation of prosecution when the adverse positions of government and defendant become solidified and the defendant is faced with the prosecutorial forces of organized society), and Moran v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (only at the point of formal proceedings does the defendant's right to counsel outweigh the state's interest in the prompt apprehension of criminals).
[4] In the Costello case the only witnesses who appeared before the grand jury were the three law enforcement officers who had interrogated the 144 witnesses in the investigation of the income tax evasion case. The officers apparently had no firsthand knowledge of the transactions.
[5] Calandra presented the issue of whether a witness summoned to testify before a grand jury may refuse to answer questions which are based on evidence obtained in an allegedly unlawful search and seizure. The court held that the damage to the historic role and functions of the grand jury from an extension of the exclusionary rule to such proceedings outweighs the benefit of any possible incremental deterent effect.
[6] See, e.g., United States v. Hogan, 712 F.2d 757 (2d Cir.1983) (the prosecutor's acting as an unsworn witness by his opinion statement to the grand jury that defendant was a "real hoodlum" and his hearsay statements that defendant was suspected of other uncharged drug crimes and of taking bribes while serving as a police officer created great prejudice to the defendant and impaired the grand jury's integrity as an independent body); United States v. Basurto, 497 F.2d 781 (9th Cir.1974) and United States v. Udziela, 671 F.2d 995 (7th Cir.1982) (due process prohibits forcing an accused to stand trial on an indictment obtained through the prosecutor's knowing use before the grand jury of perjured testimony material to the crime); United States v. Estepa, 471 F.2d 1132 (2d Cir.1972) (the prosecutor's misleading the grand jury into believing that an agent's account of the incident, the hearsay nature of which was concealed, was eyewitness testimony justifies dismissal of the indictment); United States v. Serubo, 604 F.2d 807 (3d Cir.1979) (the prosecutor's attempt to link defendant with organized crime by misleading references to "Cosa Nostra hatchet men" and to other charges on which the alleged racketeers had been acquitted warrants a remand for a hearing to determine whether the prosecutorial misconduct tainted the grand jury proceeding); State v. Johnson, 441 N.W.2d 460 (Minn. 1989) (the prosecutor's threatening members of the grand jury that they could be picked up by police, handing out instructions from previous grand juries, and giving inaccurate instructions on probable cause and the effect of a failure to indict are the types of errors that seriously undermine the integrity and independence of the grand jury and warrant dismissal of the indictment); People v. Pelchat, 476 N.Y.S.2d 79, 62 N.Y.2d 97, 464 N.E.2d 447 (1984) (the only evidence before the grand jury connecting the defendant with the crime was the testimony of a police officer who subsequently told the prosecutor that he was unable to identify defendant as a participant in the crime and that he had misunderstood the question which caused him to do so, and the prosecutor's failure to resubmit the matter after obtaining this knowledge mandates that the indictment be dismissed).
[7] See, e.g., United States v. Ricks, 817 F.2d 692 (11th Cir.1987) (defendant must show unfair or actual prejudice in order to obtain dismissal of an indictment, and although the prosecutor referred before the grand jury to defendant's prior conviction, defendant's conviction in this case without disclosure of his prior criminal record makes it highly unlikely that the indictment was based on insufficient probable cause); United States v. Page, 808 F.2d 723 (10th Cir.1987) (indictment should be dismissed only if the prosecutorial misconduct is so flagrant that there was some significant impairment of the grand jury's ability to exercise independent judgment, and the draconian remedy of dismissal was inappropriate on the grounds that the prosecutor failed to present to the grand jury certain evidence which was not clearly exculpatory); United States v. Kouba, 822 F.2d 768 (8th Cir.1987) (remedy of dismissal of the indictment based on prosecutorial misconduct is appropriate only upon a showing of actual prejudice to the accused, and the defendant has a heavy burden to overcome the strong presumption of regularity of grand jury proceedings); United States v. McKenzie, 678 F.2d 629 (5th Cir.1982) (an indictment may be dismissed only when the prosecutorial misconduct amounts to overbearing the will of the grand jury so that the indictment is, in effect, that of the prosecutor rather than the grand jury; otherwise, the defendant will have the safeguards associated with trial to insure that he will not be improperly convicted); see also United States v. Chanen, 549 F.2d 1306 (9th Cir.1977), for a review of decisions dismissing and refusing to dismiss indictments, and W. LaFave & J. Israel, supra, at § 15.4(b).
[8] The Morrison decision further indicated that the appropriate remedy for a prosecutor's obtaining incriminating evidence improperly is generally to suppress the evidence, rather than to dismiss theindictment, or to reverse the conviction based on the improper evidence, in which case the government could proceed with a new trial.
[9] Much of the information relevant to charges of failing to apply funds to payment of laborers and materialmen could have been discovered from the liens themselves in the public record.
[10] At a hearing on a motion to suppress the prosecutor will have the opportunity (which was denied at the hearing in the present case) to show he acquired the evidence through a source independent of Ryland's discussion with defendant, or the prosecutor may even concede that he does not intend to use evidence obtained by Ryland.