616 So.2d 1353 (1993)
STATE of Louisiana
v.
Michael FONTENOT.
No. CR92-910.
Court of Appeal of Louisiana, Third Circuit.
April 7, 1993.
Rehearing Denied May 6, 1993.
*1354 Patricia Jones, Asst. Atty. Gen., for plaintiff-appellee State of LA.
Gerald J. Block, Lester J. Gauthier, Jr., Lafayette, for defendant-appellant Michael Fontenot.
Before DOMENGEAUX, C.J., and LABORDE and DECUIR, JJ.
DECUIR, Judge.
In August of 1990, the defendant, Michael Fontenot, was indicted by a Houston grand jury for injury to a child. In February of 1991, after discovering that the offense occurred in Evangeline Parish, Louisiana, the Assistant District Attorney of Harris County prosecuting the case informed defense counsel the case would be dismissed for lack of jurisdiction.
On July 23, 1991, an indictment was filed charging the defendant and Martha Sullivan with cruelty to a juvenile in violation of La.R.S. 14:93. The defendant filed a motion for a judge trial and was found guilty as charged on April 9, 1992. On May 11, 1992, the trial judge sentenced the defendant to eight (8) years at hard labor. The defendant appeals.

FACTS
On July 15, 1990, Christy Sullivan, a seven year old child, visited Waterworld in Houston, Texas, with members of her family. At approximately 6:30 p.m., Mrs. Rhonda Hardin, another visitor to Waterworld, noticed Christy sitting in a lawn chair. Mrs. Hardin observed that Christy's eyes were bruised and swollen shut, that Christy had bruises on her face and neck and "had clumps of hair missing." Mrs. Hardin approached Christy and asked her what had happened to her. Christy said that she had suffocated herself. Christy explained, "I put a towel over my head so my daddy doesn't beat me." Mrs. Hardin immediately sought help for Christy by reporting Christy's injuries to the Astroworld/Waterworld security supervisor, Steve Mizwa. After obtaining a description of Christy and her party from Mrs. Hardin, Mr. Mizwa followed the Sullivan party as they made their way to the park exit. Mr. Mizwa eventually approached the defendant and questioned him about Christy's injuries. The defendant told Mr. Mizwa that Christy had run into a sliding glass door at the motel room and had been seen by a doctor. The defendant declined when Mr. Mizwa suggested that one of the park's paramedics look at Christy. Mr. Mizwa told the defendant that he would appreciate it if Waterworld Medical personnel could examine Christy's eyes because of possible aggravation of her injuries by exposure to chlorinated water. The defendant consented, and Christy was examined by a paramedic.
As the paramedic concluded his examination, Houston Police Officer, John McPhail arrived at the scene in response to a call from Waterworld security. Officer McPhail questioned defendant regarding Christy's injuries. The defendant told Officer McPhail that Christy ran into a door while playing in a hotel room. Officer McPhail then took Christy aside to speak to her privately. He sat Christy down with her back to the defendant and asked what had happened to her. Christy stated she had run into a door while playing. The officer explained to Christy that he was *1355 there to help her and he wanted her to tell the truth. Christy then put her head down and related that her daddy beat her with a broom and with his hands. Further, she stated that her daddy told her to say that she had run into a door. On at least two occasions while Officer McPhail was speaking to Christy, the defendant walked toward the two and was asked to sit down until the officer finished speaking to Christy.
Officer McPhail placed the defendant under arrest, but released him soon thereafter, upon learning that the offense might have occurred in Louisiana. Christy was taken into custody and transported by Officer McPhail to the Houston Police Department juvenile division. She was later taken to the Harris County Children's Protective Services.

ASSIGNMENT OF ERROR NOS. 1 AND 2:
By these assignments of error, defendant contends the trial court erred in denying his motion to quash the indictment on the ground of prosecutorial misconduct. The defendant argues that the Harris County, Texas, Assistant District Attorney, Denise Dryer, violated the Rules of Professional Conduct by making statements to the press, which were likely to materially prejudice the criminal proceedings against the defendant. The defendant further argues the resulting publicity deprived him of the right to a jury trial in the parish in which the offense was committed, and to due process.
At the hearing on the motion held on April 6, 1992, fourteen (14) defense exhibits were introduced into evidence. Most of the evidence consisted of newspaper articles. The other items of evidence included a video tape of a debate between former State Representative, Danny Lemoine and current Representative, Dirk Deville, in which a discussion took place concerning a letter which Lemoine had written to a State District Judge in Harris County, Texas on behalf of the defendant. Other items of evidence consisted of the video tape of a broadcast on KLFY-TV Channel Ten (10) in Lafayette, Louisiana concerning the case. The newspaper coverage of this case was placed into evidence and consisted of articles from the Opelousas Daily World, Morning Advocate of Baton Rouge, Ville Platte Gazette, Houston Post, and the Houston Chronicle.
In summary, Ms. Dryer's actions were as follows: In August of 1990, the defendant was indicted by a Houston grand jury for injury to a child. Ms. Dryer was assigned to prosecute the case. Shortly thereafter, Ms. Dryer discovered that the offense occurred in Evangeline Parish, and Texas did not have jurisdiction over the case. In February of 1991, Ms. Dryer informed the defense counsel the case would be dismissed for lack of jurisdiction. On March 7, 1991, Ms. Dryer traveled to Louisiana to meet with Evangeline Parish District Attorney, William Pucheu to discuss the case and to provide Mr. Pucheu with evidence. As a result of her meeting with Mr. Pucheu, Ms. Dryer concluded that Mr. Pucheu did not want to pursue criminal charges against the defendant. Ms. Dryer contacted Ms. Angela Simoneaux with the Morning Advocate, to report what she perceived as reluctance on Mr. Pucheu's part to prosecute the case. Subsequently, several articles were published in Texas and Louisiana newspapers dealing with the case. On July 23, 1991, the Evangeline Parish Grand Jury returned an indictment charging the defendant and Martha Sullivan with cruelty to a juvenile. The indictment was returned on behalf of the State of Louisiana and was prosecuted by the Louisiana Attorney General. Ms. Dryer is not an agent of this State, and, in speaking with the news media, she acted without the participation, consent or knowledge of Louisiana state officials. We conclude that the State of Louisiana should not be deprived of a right to prosecute a criminal offender because of the misconduct of an agent of another state over whom the State of Louisiana had no control.
Furthermore, prosecutorial misconduct does not warrant dismissal of the indictment. The trial judge properly relied on State v. Walker, 567 So.2d 581, 586 (La.1990) in denying the defendant's motion. *1356 In Walker, supra, the Louisiana Supreme Court stated that "to warrant dismissal of an indictment the prosecutorial misconduct must be of such a nature as to mislead or unfairly affect the integrity of the grand jury as an independent and unbiased body." Our Supreme Court further stated "the ultimate issue in a motion to dismiss an indictment on the basis of prosecutorial misconduct is whether the proved misconduct warrants such a drastic remedy. The remedy for prosecutorial misconduct should generally be tailored to the injury suffered from the misconduct." Id. at 586. The defendant relies entirely on federal jurisprudence as authority for quashing the instant indictment. A federal indictment, like a Louisiana indictment, will not be dismissed for prosecutorial misconduct absent a showing that the misconduct adversely affected the integrity of the grand jury.
In Bank of Nova Scotia v. U.S., 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), the Supreme Court held that "dismissal of an indictment is appropriate only `if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is `grave doubt' that the decision to indict was free from the substantial influence of such violations." 487 U.S. at 256, 108 S.Ct. at 2374.
The defendant alleges in this case that Ms. Dryer's possibly inappropriate actions resulted in prejudicial pretrial publicity. The defendant further argues that this prejudicial pretrial publicity affected the integrity of the criminal justice system. However, the defense failed to prove that the grand jury's ability to function as an independent and unbiased body was affected by Ms. Dryer's actions. Defendant is not entitled to the "drastic remedy" of a dismissal of indictment.
Furthermore, the defendant has failed to establish a factual basis for his claim. According to the defendant, the pretrial publicity, "orchestrated" by Ms. Dryer, made it impossible to receive a fair jury trial in Evangeline Parish. As a result, the defendant claims he was forced to choose between waiving a jury or seeking a change of venue and that he waived a jury "under duress." The record reflects that other than counsel's self-serving testimony at the motion hearing, the defendant has failed to show that he could not have received a fair jury trial.
In State v. Lee, 559 So.2d 1310, 1312 (La.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991), the Supreme Court explained that while a defendant is constitutionally entitled to a fair trial free from prejudice and influence, a fair trial does not mean that the jury must be totally ignorant of the case. The defendant must show more than that the public had knowledge of the facts, but rather must prove that there exists a prejudice in the collective minds of the community that would make a fair trial impossible.
Our Supreme Court in State v. Kahey, 436 So.2d 475 (La.1983), stated, "to hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."
We find that the defendant has failed to make a showing that he could not have received a fair jury trial in Evangeline Parish. At the hearing on the motion to quash, the defendant produced no evidence as to whether the prospective jurors would be able to put aside any preconceived notions of the guilt or innocence of the accused and render a fair verdict on the evidence. Further, because the defendant waived a jury trial, no actual voir dire was conducted.
Defendant contends the publicity itself constitutes sufficient proof that the defendant could not have received a fair jury trial. The "extensive publicity" referred to by the defendant consists solely of eighteen newspaper articles (two of which were published out of state), three televised news reports, and a portion of a locally televised political debate. The majority of the news reports were published almost a *1357 year prior to the trial, and the others appeared when the indictment was returned, almost eight months prior to trial. Moreover, the publicity was focused for the most part on the controversy engendered by Ms. Dryer's criticism of the Evangeline Parish District Attorney's Office, rather than on the guilt or innocence of the defendant. The record does not justify a presumption that the defendant would not obtain a fair trial because of a trial atmosphere corrupted by press coverage. State v. Wilson, 467 So.2d 503 (La.1985); State v. Comeaux, 514 So.2d 84 (La.1987).

ASSIGNMENT OF ERROR NO. 3:
By this assignment, the defendant contends the trial judge committed reversible error in convicting the defendant of cruelty to a juvenile in violation of La.R.S. 14:93 despite the lack of competent evidence of the age of the defendant which proof is an essential element of the offense.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, at 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. The defendant has limited this assignment of error to the element of the crime regarding the age of the defendant.
The crime of cruelty to juveniles is substantively defined in La.R.S. 14:93 which reads in pertinent part as follows:
A. Cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child. Lack of knowledge of the child's age shall not be a defense.
In State v. Zihlavasky, 505 So.2d 761 (La.App. 2nd Cir.1987), writ denied, 511 So.2d 1152 (La.1987), the defendant was convicted of two counts of aggravated crime against nature in violation of La.R.S. 14:89.1. On appeal, the defendant claimed the prosecution failed to prove an aggravating circumstance because there was no direct evidence that the defendant was at least three years older than the victims. The court found sufficient evidence of the defendant's age to support the conviction. In reaching its conclusion, the court relied on the facts that the defendant's physical appearance was open to view by the jurors, the defendant was prosecuted outside the juvenile court, several witnesses referred to the defendant as "man," and there was evidence that the defendant belonged to "Parents without Partners."
The Second Circuit again addressed the issue of sufficient proof of age in State v. Shelton, 545 So.2d 1285 (La.App. 2nd Cir.1989), writ denied, 552 So.2d 377 (La.1989). In Shelton, the defendant appealed his conviction of molestation of a juvenile on the ground that the prosecution failed to prove that the was over the age of seventeen at the time of the offense as required in La.R.S. 14:81.2. Although there was no direct proof of the defendant's age, the court held there was sufficient proof of the defendant's age as the evidence showed the defendant was married to the victim's mother, the defendant's physical appearance was before the trier of fact, and the defendant was being tried as an adult.
In the case sub judice, there is evidence that the defendant was over the age of seventeen at the time of the offense. *1358 First, Dr. Mathis testified that the history he was given when he examined Christy in Houston showed that Christy's "real father was thirty-four years of age." Dr. Mathis indicated that he received this information from Christy. While the defendant is not Christy's biological father, the testimony at trial was clear that Christy referred to the defendant as "my daddy." Thus, the testimony of Dr. Mathis supports a fair inference that the defendant was over seventeen at the time. Additionally, April Lee Fontenot, who was nine years old at the time of the trial, testified that she is the defendant's daughter. Christy also testified that April is the defendant's daughter. Finally, the sufficiency of the State's evidence as to the defendant's age is bolstered by the fact that the defendant was tried as an adult and that his physical appearance was placed before the court when Christy identified him as the man who beat her. When viewed in the light most favorable to the prosecution, a reasonable trier of fact could easily have found that the essential element of the defendant's age was proved beyond a reasonable doubt. For the foregoing reasons, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4:
By this assignment of error, the defendant contends the trial judge committed reversible error in failing to grant defendant's motion for discovery, by letter ruling of March 30, 1992, and specifically quashing subpoenas for production of the Louisiana Department of Social Services case record of Christy Sullivan and further committed reversible error in allowing the testimony of Dr. Linolski, psychologist, on behalf of the State in rebuttal. Dr. Linolski was allowed to testify using portions of those very same records. Thus, defendant alleges the failure to produce these records and allowing Dr. Linolski to testify and utilize these records when not producing them for defendant's use was in violation of the defendant's right of confrontation as guaranteed by the Sixth (6th) Amendment of the United States Constitution and as further guaranteed by the Fourteenth (14th) Amendment and Equal Protection Clause of the United States Constitution. Finally, the defendant alleges these violations denied defendant a right to present an adequate defense, to have a fair trial, and to confront and cross examine the witnesses against him in violation of Article I, Section 16 of the Louisiana Constitution.
Prior to trial, the defendant filed a Motion for Production or Alternatively In Camera Review seeking disclosure of "all medical reports, names of witnesses, statements and any and all exculpatory evidence" in the files of the Louisiana Department of Health and Human Resources, Office of Family Services. The State declined to produce the records to the defendant on the grounds that the records were confidential by statute and were not exculpatory. Following an in camera review of the records, the court held that the requested records did not contain any "Brady" material and more importantly even if there was evidence which had probative value, its probative value was outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury and, therefore, would be inadmissible at trial pursuant to La.C.E. art. 403. The defendant subsequently filed an emergency writ application with this court seeking review of the district court's ruling. This court found no error in the trial court's ruling. State of Louisiana v. Michael Fontenot, an unpublished writ bearing docket number K92-370 (La.App. 3rd Cir., April 3, 1992). When a defendant has been given a reasonable opportunity to be heard in a writ application and no new evidence is presented since the first ruling on the issue, great deference should be given the prior ruling of the court. State v. Regan, 601 So.2d 5 (La.App. 3rd Cir.1992). Therefore, this issue will not be reviewed again by this court on appeal.
Defendant further contends that Dr. Linolski should not have been allowed to testify because his testimony was based on records which were not provided to the defense in discovery. This argument is not supported by the evidence. First, Dr. Linolski testified that his testimony was based on his own evaluation and treatment *1359 of Christy, not on a review of other records. Therefore, if there was error, it would be harmless since the records in question were not used by Dr. Linolski in his evaluation of the victim. Secondly, defendant cites no authority for the proposition that an expert cannot give testimony based on records which do not contain "Brady" material and were therefore not provided to the defense in discovery. Defendant complains that he did not have access to the same information as the State. There is, however, no duty to provide the defense counsel with unlimited discovery. U.S. v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). In reviewing the contested records, the trial court found the records did not contain any "Brady" material. Thus, the defense was not prevented from presenting an adequate defense as this court has already determined that the trial judge was correct in ruling that there was no exculpatory evidence in the records sought to be obtained by the defense. For the foregoing reasons, this assignment of error is, also, without merit.

ASSIGNMENT OF ERROR NO. 5:
By this assignment of error, defendant contends the trial judge committed reversible error in rendering a verdict of guilty due to lack of credibility of the complaining witness as a matter of law and because the method of injury claimed by the victim is so unbelievable on its face that it defies physical laws.
The defendant asserts that Christy testified she was poked in the corners of each eye with a broom stick, but she could not remember how the striking took place. The defendant's contention that Christy's testimony defies "the laws of physics and natural law" is based entirely on the testimony of Dr. Emile Laga. However, the record reflects that Dr. Mathis and Dr. McCormick testified that Christy's explanation of the cause of her injuries is entirely consistent with medical evidence.
Finally, in this case the trial judge explicitly found that Christy's testimony was credible. It is the province of the fact finder and not that of the appellate court to assess the credibility of witnesses. The appellate court cannot re-evaluate the credibility of witnesses and then proceed to overturn a factual determination of guilt. State v. Reaves, 569 So.2d 650 (La.App. 2nd Cir.1990), writ denied, 576 So.2d 25 (La.1991). Where a trier of fact has made a rational credibility determination, an appellate court cannot disturb it on review. State v. Mussall, 523 So.2d 1305 (La.1988).
Although the defense relies on the testimony of Dr. Laga, which is contradictory to the victim's testimony, there is also reliable testimony from two other physicians supporting the victim's testimony. The judge specifically stated that he believed the victim was a credible witness. Therefore, this court will not re-evaluate the credibility of the witnesses as suggested by the defendant. For the foregoing reasons, this assignment of error is without merit.

CONCLUSION
La.C.Cr.P. art. 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record reveals the court did not so inform the defendant. This defect has no bearing on whether the sentence is excessive and thus is not grounds to reverse the sentence or remand the case for resentencing. La.C.Cr.P. art. 921. The three year prescriptive period does not begin to run until the judgment is final under La.C.Cr.P. art. 914 or 922, therefore, prescription is not yet running. The district court is hereby directed to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings. State v. Cox, 604 So.2d 189 (La.App. 2nd Cir.1992); State v. Stephens, 604 So.2d 203 (La.App. 2nd Cir.1992).
AFFIRMED WITH INSTRUCTIONS.