JiDECUIR, Judge.
The defendant, Sylvester Hillery, was charged by bill of information with two counts of armed robbery, violations of La. R.S. 14:64. After a jury trial, the defendant was found guilty of the armed robbery of Raymond Carlson and the attempted armed robbery of Kimberly Meduna.
The defendant filed a motion for post-verdict judgment of acquittal. The trial court granted the defendant’s motion regarding the attempted armed robbery of Kimberly Meduna. Immediately following this the court sentenced the defendant to eight years in the custody of the Department of Corrections to be served without benefit of probation, parole, or suspension of sentence. The State of Louisiana filed a Motion to Reconsider Sentence which was denied by the trial court. On appeal the state urges that the trial court erred in granting the defendant’s Motion for Post Verdict Judgment of Acquittal and in making a downward departure from the sentencing guidelines as well as in failing to consider the aggravating circumstances presented in this case.
I aFACTS
On October 13, 1991, Kimberly Meduna and her two children were visiting Raymond Carlson, Jr., at his home located at 301 Leland Street in Sulphur, Louisiana. During the course of their visit, two men knocked on the door. One of these men Carlson knew from a past acquaintance as “Derrick” later identified to be the defendant, Sylvester Hil-lery. The other man who was introduced as “Gary” was later identified as Marcus Coleman. The defendant and Coleman entered the residence and asked to speak with Kimberly Meduna and then took her into another room. Meduna reappeared at some point and asked Carlson, who was on the phone with his wife, whether he could cash a $100.00 check. Carlson told Meduna that he did not have any money at the time but he could get some the next day. At that point Coleman came out of the room with a gun. Coleman then pointed the gun at Carlson and instructed Carlson to approach him, cocked the hammer of the gun and pointed it at Carlson’s head and forced him to the floor.
The defendant, armed with a pair of wire cutters, proceeded to cut all of the wires in the house, in particular, the telephone wires and cable wires. Carlson testified the defendant scurried about the house looking for items to take. Carlson also stated the defendant was not ordered by Coleman to do any of these things but did everything on his own volition.
At the same time Carlson was ordered to lay on the floor, Kimberly Meduna’s children began screaming. At one point Meduna’s son ran by and Coleman picked the boy up under the chest, pointed the gun at the boy’s head and said “If you don’t cooperate, I’m going to kill you and the kids.” During the time this was going on, Meduna was underneath the dining room table and was crying uncontrollably.
During the course of events the defendant and Coleman moved Carlson and Meduna to the bedroom and made them get under the bed and later forced them into the closet. While Coleman had a gun pointed towards Carlson and Meduna, the defendant 13rummaged through the jewelry taking a watch, rings, and gold chains. The defendant and Coleman kept Carlson and Meduna in the closet but periodically opened the door to ask where certain items were located. At some point the two removed Carlson from the closet to ask him what was inside a safe. When Carlson told him he did not have a key and could not open the safe the gun was again cocked and pointed at Carlson’s head and he was told he was going to die. However, after a great deal of pushing, shoving, and profanity, the defendant and Coleman finally accepted Carlson’s explanation that he could not open it because his wife had the only key.
The defendant and Coleman then took Carlson and Meduna back into the living room where they made Carlson unplug all of the electronic equipment in the house and stack it on a table so that it could be hauled off. Thereafter, Carlson and Meduna were moved back into the bedroom and were threatened that if the police were called and the robbery reported they would come back *577 to kill them. Meduna offered the perpetrators the keys to her van so that her children would not be harmed. Unfortunately, because Meduna did not testify at trial, it is unclear whether it was the defendant or Coleman who took the keys to her van. However, the keys to Meduna’s van were found in Carlson’s front yard. After hearing the car start, Carlson and Meduna forced their way out of the closet and Carlson went across the street to a neighbor’s house to call 911. The defendant and Coleman were subsequently arrested for armed robbery.
During trial, the defendant took the stand to testify in his own defense. His testimony, not surprisingly, was extremely exculpatory. The defendant testified he sold Carlson and Meduna drugs on credit and went to Carlson’s house to collect payment. Defendant testified that when they could not pay him the money he was owed he asked them if he could have something to hold as collateral. The defendant stated Carlson told him that he could take what he wanted. Consequently, defendant took a cellular phone and a microwave and brought it outside Uto the car. The defendant stated that Coleman had already pulled a gun before he entered the home again. Defendant testified he was scared and did not know what to do. Defendant also claimed he did not cut the phone lines, was never armed with a weapon, nor did he ever threaten to hurt the children. Defendant testified that he was not involved in the robbery but rather sat on the couch scared of Coleman.

ERRORS PATENT

La.C.Cr.P. art. 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows the court did not so inform the defendant. This defect has no bearing on whether the sentence is excessive and thus is not grounds to reverse the sentence or remand the case for resentencing. La.C.Cr.P. art. 921. The three year prescriptive period does not begin to run until the judgment is final under La.C.Cr.P. art. 914 or 922, so prescription is not yet running. See State v. Fontenot, 616 So.2d 1353 (La.App. 3d Cir.1993).
Accordingly, the district court is directed to inform the defendant of La.C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and file written proof that the defendant received the notice in the record of the proceedings.

ASSIGNMENT OF ERROR NO. 1

By this assignment of error the state urges the trial court erred in granting the defendant’s Motion for Post Verdict Judgment of Acquittal as to the attempted armed robbery of Kimberly Meduna.
A post verdict judgment of acquittal should be granted only if the court finds that the evidence, viewed in the light most favorable to the state, does not reasonably permit a finding of guilt. La.Code Crim.P. art. 821(B). In addressing the question of sufficiency of the evidence, the reviewing court | sis not called upon to decide whether it believes the witness or whether the conviction is contrary to the weight of the evidence. While the court should not substitute its judgment for that of the jury, it must insure that the evidence presented was such that reasonable jurors would be convinced beyond a reasonable doubt. State v. Mussall, 523 So.2d 1305 (La.1988). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. King, 563 So.2d 449 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990).
Defendant was acquitted on the charge of attempted armed robbery. To support a conviction of attempted armed robbery, the state must sufficiently establish the elements contained in La.R.S. 14:27 and La.R.S. 14:64.
In the instant ease the defendant and Marcus Coleman went to the residence of Raymond Carlson and asked to speak with Kimberly Meduna. While at the residence the defendant and Coleman forced, threatened and intimidated Carlson, Meduna and Medu-na’s two minor children while armed with a dangerous weapon. During the course of this ordeal the defendant and Coleman took *578 numerous items from the residence such as jewelry, appliances, and stereo equipment. Additionally, Meduna offered them the keys to her van in the hope that her children would remain unharmed. These keys were later found in Carlson’s front yard.
In his reasons for granting the defendant’s Motion for Post Verdict Judgment of Acquittal, the trial court stated that because the victim, Meduna, did not testify at trial the defendant did not have the opportunity to cross-examine her. The trial court found that even looking at the case in a light most favorable to the prosecution there was not sufficient evidence to affirm the conviction of attempted armed robbery. We disagree.
| (¡During the course of the trial, Raymond Carlson testified Meduna was terrified about the occurrence and had stated immediately after the armed robbery that “under no circumstances would she testify or press charges, due to the fact that she believed they would come back and kill her kids.” True to her word, Meduna did not testify. Thus, at trial the jury heard only the testimony of Raymond Carlson, the defendant, and the police officer who took Meduna’s statement. It was during the course of the officer’s testimony that it was revealed that Meduna’s keys were offered up and taken by the perpetrators.
The question of credibility is within the sound discretion of the trier of fact. Factual determinations of the jury are entitled to great weight and will not be disturbed unless they are contrary to the evidence. A review of the record reveals the jury’s decision was rational. In State v. Dupre, 537 So.2d 1200 (La.App. 3d Cir.1989), writ denied, 541 So.2d 891 (La.1989), this court held that the trial court’s grant of a post verdict judgment of acquittal was improper because the jury’s decision was rational and it could have found defendant guilty beyond a reasonable doubt. The Dupre court found the judge who granted defendant’s motion improperly re-evaluated the credibility of the witnesses which is not allowed under the more restrictive Jackson' rationale.
In the instant case, the trial court, although unsure about his earlier ruling, conceded that he admitted the officer’s testimony under a hearsay exception. The jury therefore heard evidence that Meduna under duress, offered her keys to the perpetrators. The trial court’s concern that the defendant was prejudiced because he was unable to cross-examine Meduna was improper under the Jackson standard of review used in determining whether to grant a defendant’s Motion for Post Verdict Judgment of Acquittal. The jury’s finding that sufficient evidence was presented to convict defendant of the attempted armed robbery of Kimberly Meduna was indeed rational, particularly in light of the Jackson standard of review.
| ^ASSIGNMENT OF ERROR NO. 2
By this assignment of error the state urges the trial court erred by improperly deviating downward from the Louisiana Sentencing Guidelines, and by failing to consider aggravating circumstances.
Defendant was convicted of the armed robbery of Raymond Carlson and was sentenced to serve eight years at hard labor without benefit of probation, parole or suspension of sentence. In the instant case, the Louisiana Sentencing Guidelines provided a sentencing range from a minimum of 210 months (seventeen years) to a maximum of 240 months (twenty years).
In sentencing the defendant the trial court failed to consider any aggravating circumstances that were supported by the record. Furthermore, the reasons provided for the trial court’s downward deviation from the sentencing guidelines are less than compelling. Nevertheless, the recent Louisiana Supreme Court decision of State v. Smith, 93-K-0402 (7/5/94); 639 So.2d 237, which broadens the trial court’s discretion in sentencing in turn effectively cuts off appellate review of sentences at the request of the state.
In Smith, the court stated:
“On application by the State, we granted rehearing in this matter and, for the reasons which follow, now hold that: (1) while a trial judge must consider the Guidelines, he has complete discretion to reject the Guidelines and impose any sentence which is not constitutionally excessive, but is within the statutory sentencing range for *579 the crime of which a defendant has been convicted, so long as he states for the record the considerations taken into account and the factual basis for his imposition of that sentence, La.Code Cr.P. art. 894.1; and (2) where the trial judge has considered the Guidelines and imposed a sentence, adequately stating for the record the considerations taken into account and the factual basis for imposition of that sentence, an appellate court is limited to a review of the sentence imposed for constitutional excessiveness, without regard as to whether the trial judge either employed or deviated from the Guidelines.”
State v. Smith at p. 3; at p. 240.
For the foregoing reasons, this assignment lacks merit.

CONCLUSION

Accordingly, the judgment of the trial court sentencing defendant to eight years for armed robbery is affirmed.
The judgment of the trial court granting a post-verdict judgment of acquittal on the charge of attempted armed robbery is reversed. It is hereby ordered that the jury verdict which found the defendant guilty of attempted armed robbery is reinstated and this matter is remanded to the trial court for sentencing. In addition, the trial court is directed to inform the defendant of La. C.Cr.P. art. 930.8 in accordance with this opinion.
Affirmed in Part; Reversed in Part; and Remanded with Instructions.