701 So.2d 712 (1997)
STATE of Louisiana, Plaintiff-Appellee,
v.
Sonni Lou LOFTON, Defendant-Appellant.
No. 97-00383.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1997.
*713 Van Kyzar, District Attorney, for State.
J. Michael Small, Alexandria, for Sonni Lou Lofton.
Before YELVERTON, PETERS and PICKETT, JJ.
PICKETT, Judge.
In the late evening hours of August 16, 1995, Carl Lofton, 60 years of age and in poor physical health, was shot five times with a .38 caliber revolver as he was lying in his own bed in his home on Old Highway 1 North in Natchitoches, Louisiana. The victim was shot in the neck, the left upper arm, the chest, the abdomen, and the back just above his hip. The victim's death was not immediate; the victim died while being transported to the Natchitoches Parish Hospital by ambulance. The following facts were revealed by Sonni Lofton, defendant and the victim's daughter, through her confession and at her sentencing hearing. Natchitoches Parish Sheriff Detective Travis Trammell, Jr., testified that on August 18, 1995, the investigation into the murder of Carl Lofton quickly produced leads. James Wilson was questioned and detailed his involvement in the murder-for-hire scheme that led to the victim's death. The defendant confessed to her part in the murder. In her recorded confession, Sonni Lofton stated that she and Nadine, her mother, decided to have Carl Lofton murdered and offered Wilson two thousand dollars to do the job. It was the defendant who actually made contact with Wilson, an old high school friend. The following evening, on Wednesday, August 16, 1995, the defendant, after conferring with Wilson, picked up Otis Rainey and drove him to her father's house where he was given two thousand dollars and the victim's .38 revolver. *714 Rainey went inside the Lofton residence and shot the victim repeatedly while the defendant and her mother waited outside. The two then drove Rainey to Lake Street in Natchitoches where they dropped him off and proceeded back to the Lofton home, calling 911 to report that Carl Lofton had been shot. Defendant stated that she had her father murdered because she and her mother were afraid of him as he had been abusive toward her, her mother and siblings for years and had threatened to kill her and her mother.
The defendant, Sonni Lou Lofton, along with Nadine Lofton, James Wilson, and Otis Rainey were all jointly indicted by a grand jury for the first degree murder of Carl Lofton. The District Attorney amended the charge to second degree murder. Thereafter, the District Attorney reduced the charge to manslaughter, a violation of La.R.S. 14:31. On November 19, 1996, all four defendants pled guilty to manslaughter. On January 31, 1997, the defendant and Otis Rainey were both sentenced to serve thirty-two years at hard labor. Nadine Lofton was sentenced to five years at hard labor. James Wilson received a sentence of three years at hard labor. Defendant timely filed her Motion to Reconsider Sentence which was denied without hearing by the trial court. Defendant now appeals her sentence. Defendant alleges in her assignment of error that the trial court erred in imposing an excessive sentence in violation of Article 1, Section 20 of the Louisiana Constitution and in denying Defendant's Motion to Reconsider Sentence.
At the sentencing hearing, all six of the decedent's children along with the decedent's first and second wife told a frightening story of lives with the decedent. Nadine Lofton testified that on the day before the victim died, he told both Sonni and Nadine that "he would blow Sonni's f___ brains out, he would blow Nadine's brains out, and then he would blow his own brains out because he had nothing to lose." She also testified that on one occasion the victim said he would kill her, and he would let her know when he was about to kill her. There is testimony that the victim administered brutal and harsh beatings upon Nadine. She stated that during her marriage with the victim he hit her with extension cords, pots and pans, telephone receivers, cowboy boots, and his fists. She stated that the victim constantly accused her of cheating and called her a "slut" and "trash."
Martha Lofton, the victim's first wife, testified that after marrying, the victim began slapping her around and that the victim's abusiveness got progressively worse. Apart from inflicting beatings upon his wives, there was testimony adduced that during the summers his two oldest children spent with their father, he beat them regularly. The summer visits were referred to by Ann as "boot camp" and Lynn said it was "like going away to summer prison camp." However, Lynn Hebert, the victim's daughter, testified that Nadine took most of the physical abuse during the summer visits. Lynn also testified that when she was young the victim would become angry while you were sleeping and wake you up to do some kind of chore. Lynn testified that when she was eleven and Ann was ten that they had forgotten to feed their dog. The decedent took the dog outside after supper and made them watch him shoot their dog. Becky Keely, another daughter of the victim, testified that on occasion she considered killing the victim when the victim slapped Nadine. She stated, "I just stood there and I knew that if he walked in and saw me with that gun, I'd had to use it." There was also testimony that on one occasion the victim gave Sonni a shovel and told her to dig a hole, then fill it up, and dig another hole, then fill it up. About 1:00 in the morning, Sonni sat down on a step to rest and the victim walked up behind her, picked up a shovel, and hit her in the back. The record is saturated with incidents of brutality and abuse the victim administered upon his family.
The trial court noted "the severity and duration of the physical brutality, verbal degradation, and mental stress" to which the defendant was subjected. The trial court continued by stating the following before sentencing Sonni Lofton:
"Those factors will, in fact, mitigate your sentence downward from the maximum. However, the stark reality remains that *715 Carl Lofton was old, ill and lying defenseless in his bed when Otis Rainey walked into his bedroom and shot him to death in his own bed, in his own house, with his own gun, which gun was supplied to Mr. Rainey by Ms. Lofton ... Being subjected to child abuse ... does not deprive one of the intelligence and moral fiber to know right from wrong, particularly in a decision of such gravity as whether or not to commit murder. Ms. Lofton, your decision to contract a killer ... was a deliberate, conscious, malicious and unfortunate choice for which you alone must be responsible."
Article 1, Section 20 of the Louisiana Constitution of 1974, prohibits "cruel, excessive, or unusual punishment." A sentence which falls within the statutory limits may nevertheless be excessive under the circumstances. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Naquin, 527 So.2d 601 (La.App. 3 Cir.1988). To constitute an excessive sentence this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La. 1981); State v. Everett, 530 So.2d 615 (La. App. 3 Cir.1988), writ denied, 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210, 1217 (La.1982).
The trial court did consider the particularly gruesome and heinous manner in which this crime occurred when imposing sentence. See State v. Gachot, 609 So.2d 269 (La.App. 3 Cir.1992), where the defendant was a fifteen-year-old defendant who argued that he murdered his father and mother because his father accused him of being a homosexual and had threatened to kill him and his mother. This court upheld the defendant's conviction and sentence to the maximum penalty for the crime of manslaughter.
Defendant, originally indicted with a capital crime, benefitted from a plea bargain. Her sentence of 32 years is well within the statutory range of La.R.S. 14:31(B), which provides for a maximum penalty of 40 years at hard labor. Although the statute mandates that the sentence be without probation or suspension of sentence, it does not remove the defendant's eligibility for parole.
Addressing the contention that the defendant received a more severe sentence than her other co-defendants, it is well settled that a sentence must be individualized as to each defendant. Even when dealing with co-defendants or other defendants with similar records, there is no requirement that the sentences be the same. State v. Williams, 677 So.2d 692 (La.App. 3 Cir.1996); State v. Lemelle, 502 So.2d 130 (La.App. 3 Cir.1987). This contention lacks merit.
Considering the nature and gravity of defendant's crime in the present case, we do not find the penalty imposed is so disproportionate to the crime as to shock our sense of justice.
A review of the record reveals two errors patent regarding defendant's sentence. Neither of these errors requires reversal of defendant's conviction and sentence. The trial court failed to give defendant credit for time served, La.C.Cr.P. art. 880, and failed to advise her of the La.C.Cr.P. art. 930.8 three year time limit for filing for post-conviction relief.
The defendant must be given credit for time served. La.C.Cr.P. art. 880; State v. Carr, 618 So.2d 1098 (La.App. 1st Cir. 1993). Accordingly, defendant's sentence is amended to award credit for time actually spent in custody, if any, prior to the execution of his sentence. La.C.Cr.P. 882. Resentencing is not required. State v. Procell, 626 So.2d 954 (La.App. 3 Cir.1993). We remand with instructions that the trial court order the amendment of the commitment and the minute entry of the sentencing to reflect that the defendant be given credit for time served. Additionally, the trial court is directed to inform the defendant of the Article 930.8 provisions by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof of defendant's receipt of such notice *716 in the record of the proceedings. See State v. Fontenot, 616 So.2d 1353 (La.App. 3rd Cir.1993).
For the foregoing reasons, we hereby affirm defendant's sentence imposed as amended. This case is remanded to the trial court for further action consistent with this opinion.
AFFIRMED AS AMENDED; REMANDED.
PETERS, J., dissents with written reasons.
PETERS, Judge, dissenting.
I respectfully disagree with the majority's conclusion that the trial court did not abuse its discretion in sentencing Sonni Lou Lofton to thirty-two years at hard labor for her part in the death of her father, Carl Lofton. The disparity between the sentence given to the defendant and that given to her mother for the same crime is, in my opinion, a manifest abuse of discretion by the trial court.
Carl Lofton was a brutal, violent, and abusive husband and father. Carl Lofton's former wife, his five other children, the defendant, and her mother described the physical and mental abuse he perpetrated against his family. Four of the witnesses came from out of stateGeorgia, Mississippi, Tennessee, and Texasto voluntarily testify about Carl Lofton's violence against those under his control.
Having been subjected to this abuse since 1961, Nadine Lofton decided in August of 1995 that she could no longer live with Carl Lofton and that something had to be done. The defendant tried to talk her mother into leaving the state with her, but Nadine Lofton refused, believing there was nowhere she could hide from her husband. Instead, she suggested that there was another way to end the violenceby killing Carl Lofton. The defendant's principal involvement in the conspiracy was to locate someone who would kill her father. It was Nadine Lofton who solicited the help of the defendant in finding that someone; it was Nadine Lofton who supplied the $2,000.00 fee for Otis Rainey to kill Carl Lofton; and it was Nadine Lofton who furnished the murder weapon. Both the defendant and her mother drove to pick up Rainey and brought him to the scene of the killing. The two women waited outside of the house as Rainey went inside and shot Carl Lofton five times, and both women drove Rainey back home.
The majority cites State v. Williams, 96-37 (La.App. 3 Cir. 6/26/96); 677 So.2d 692, and State v. Lemelle, 502 So.2d 130 (La.App. 3 Cir.1987), as authority for the proposition that even when the court is dealing with codefendants, there is no requirement that the sentences be the same. While I agree with this statement, I note that neither of those cases dealt with situations where the defendants were complaining of a disparity between their sentences and those of codefendants. In fact, disparity of sentences between codefendants is not to be ignored in our analysis but is a factor to be considered among other factors. State v. Smith, 433 So.2d 688 (La.1983); State v. White, 593 So.2d 882 (La.App. 2 Cir.1992). I find that in this case, all other factors are equal, leaving the disparity in the sentences as the only factor left to consider.
The defendant was seventeen years old when her father was killed. According to all of the testimony, all she had ever known was to expect violence from her father. The trial court accepted the testimony concerning the abuse yet found that Nadine Lofton was merely a pawn being used by others. The court then factored into Nadine Lofton's sentence "the severity and duration of the physical brutality, verbal degradation, and mental stress" that she had been subjected to yet failed to do so in sentencing the defendant. There is no evidence to suggest that Nadine Lofton was any less culpable than the defendant in the commission of this crime, yet the defendant was sentenced to thirty-two years at hard labor and Nadine Lofton was sentenced to only five years at hard labor.
This is an unusual case. Had Sonni Lou Lofton been the sole perpetrator of this crime, it is doubtful that the thirty-two-year sentence would have been seriously contested. Had Nadine Lofton been the sole perpetrator, or had she received the same sentence as the defendant, affirmation of the sentences *717 would not have been difficult. We cannot remedy the fact that Nadine Lofton received such a light sentence. However, under these inequitable circumstances, we should vacate the defendant's sentence and remand this matter to the trial court for resentencing to a time period more consistent with that which was given to Nadine Lofton.