Judgment rendered September 22, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,031-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

MELINDA R. DUNGAN                           Appellant

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of Franklin, Louisiana
Trial Court No. 2018-375F

Honorable John Clay Hamilton, Judge

* * * * *

ROBERT S. NOEL, II                          Counsel for Appellant

LAVALLE BERNARD SALOMON

MELINDA R. DUNGAN                           Pro Se

PENNY WISE DOUCIERE                         Counsel for Appellee
District Attorney

CAROLINE HEMPHILL
AMANDA MICHELE WILKINS
Assistant District Attorneys

* * * * *

Before GARRETT, STONE, and ROBINSON, JJ.

**GARRETT, J.**

Following her guilty plea, the defendant, Melinda R. Dungan, was sentenced to serve 30 years at hard labor for manslaughter and ten years at hard labor for obstruction of justice. The sentences were ordered to be served consecutively. Dungan argues on appeal that the trial court abused its discretion in the imposition of consecutive sentences for convictions arising out of the same course of conduct. She also argues that the imposition of sentences totaling 40 years is excessive, considering her medical condition and lack of criminal history. For the following reasons, we affirm the convictions and sentences.

## FACTS

Dungan was in her late 50s at the time of this offense in 2017. Enloe Dean, who was 71 years old, lived with Dungan on her farm for 12 years.[1] Dean had been a welder and pipefitter. He was retired and was drawing Social Security. He did not live extravagantly and had saved a substantial sum of money.

Dean's brother stated that, in June 2017, Dean executed a will naming Dungan as the main beneficiary of his estate. Approximately two weeks later, in July 2017, Dean went missing. Dungan claimed that Dean left to go work in Iowa. Dean's family became suspicious and suspected that Dungan was involved in the disappearance. Law enforcement officers investigated the matter for many months. Their efforts included taking dogs to the property to search for a body. They were not immediately successful.

---

[1] The victim's name is spelled "Enloe" at some points in the record and "Enlo" at other points. We will use the spelling in the grand jury indictment.

A friend of Dungan's, Wendy Ford, agreed to cooperate with law enforcement officers in investigating the matter after Dungan made some disturbing statements to her about Dean's disappearance. On May 29, 2018, Ford wore a recording device while talking with Dungan about Dean's disappearance. The women drank wine and discussed the course of the police investigation. Eventually, Dungan admitted that she killed Dean and implied that she hid the body. She said they had been in the barn and Dean was changing a flat tire on their cattle trailer. They were not arguing, but Dungan felt she could not breathe and she had had enough. She hit Dean in the head. She said it was "really quick, like two seconds." She indicated that she buried the body on her property and said that her brother Todd was going to come over and "push hills down and spread the dirt around" when he got vacation. She said that Todd's wife, Martha, knew what she had done. Dungan said that "it worked out. I guess it was meant to be." Ford said that she hated it happened. Dungan said that she did not regret it. She again said she could not breathe and she was fed up after 12 years.

Dungan said that she previously tried to kill Dean by crushing six Xanax tablets and putting them in a hamburger. Dungan commented that she "knew better" when she was doing that. Dean told her that the burger burned his throat and Dungan threw it in the backyard. She said she just knew there would be dead animals in the backyard the next day.

Dungan also admitted that, in October 2017, she traveled to Georgia with Martha to get some things out of a house belonging to Martha and Todd. The house was in bad shape and was encumbered by a large debt. Dungan purposely turned on a stove burner and put a gallon of cooking oil on it. The house burned down and Dungan told authorities that she was

2

afraid she accidently burned down the house while warming up some chicken. She told authorities that, because she has multiple sclerosis, she cannot remember things. Dungan told Ford that she felt like she had to burn down the house. Dungan also described in detail Dean's retirement funds, investment accounts, and other assets she would be receiving.

Dungan was arrested for Dean's murder and, on May 31, 2018, she gave a statement to law enforcement officers. A video recording of the statement is contained in the record. Prior to giving her statement, she was informed of her *Miranda* rights and knowingly and intelligently waived those rights. At first, Dungan insisted that Dean simply left and was off working somewhere. Eventually, she admitted killing Dean, burning and burying the body. She said there was a room in the barn that Dean would lock her in for periods of time. On the day of the offense, she claimed that he was threatening to put her in the room and she snapped. She said she couldn't breathe. Dean was changing a tire on a cattle trailer and she hit him in the head with a pipe. She used a tractor and dug a hole near a pond on her property. She had some oil and burned the body. She told the officers where the body was buried. A search of the area resulted in the discovery of a metatarsal bone, a charred pouch of the brand of tobacco used by Dean, and burned cowboy boots. It was determined that DNA from the bone was paternally related to DNA furnished by Dean's brother.

In July 2018, Dungan was charged by grand jury indictment with the first degree murder of Dean, which occurred on July 10, 2017.[2] On

---

[2] The grand jury indictment also charged Dungan's sister-in-law Martha and her brother Todd as codefendants.

December 10, 2018, Dungan filed a motion to suppress statements made to law enforcement officers, claiming the statements were not freely and voluntarily made. She asserted that an adequate waiver of the right to remain silent and the right to counsel was not obtained, and her statements were the result of pressure and coercion. On May 17, 2019, the state filed an opposition to the motion to suppress. The opposition was set for hearing on November 5, 2019, and the motion to suppress was to be heard on November 14, 2019.

On November 5, 2019, Dungan filed a motion to suppress statements she made to Ford, who assisted the sheriff's office in obtaining incriminating statements from her. She claimed that Ford "plied her with intoxicating beverages" and induced her to give an inculpatory statement. She claimed that her constitutional rights were violated because Ford was acting as an agent of the state. The record indicates that there was a hearing on one or both of the motions to suppress. The minutes do not reflect when the motions were considered by the court or how the court ruled. Defense counsel did not designate the hearings as part of the record on appeal.[3]

On January 7, 2020, the indictment was amended to charge Dungan with manslaughter and obstruction of justice. On that date, Dungan, the state, and the trial court entered into a plea agreement providing that the charge of first degree murder would be reduced to manslaughter, with no

---

[3] At the guilty plea hearing, R.p. 89, the prosecution stated, "we had a quite in depth motion to suppress, we went over a lot of the facts of the case. . . .I'd like to use that as my factual basis." On R.p. 99, the court asked defense counsel if he had discussed the facts of the case with the defendant and had sufficient time to investigate the case. Defense counsel said, "Yes sir, including filing two motions to suppress, one of which was heard." On R.p. 100, the trial court stated, "There has been a factual basis provided to the court by the hearing of motions, which the factual basis has been agreed upon by both the State and the defendant, is that correct?" Defense counsel responded, "That is correct Your Honor."

sentencing cap, and the charge of obstruction of justice would be added, with a sentencing cap of ten years. The agreement also specified that the court might order the sentences to be served consecutively. Dungan entered her plea of guilty to the charges on that same date. The state used the testimony from a motion to suppress as the factual basis for the plea.[4] The trial court properly Boykinized Dungan and found that the plea was freely and voluntarily entered and the plea was accepted. The trial court ordered a presentence investigation ("PSI") report.

A sentencing hearing was held on March 10, 2020. Dungan was sentenced to 30 years at hard labor for the offense of manslaughter and ten years at hard labor for the offense of obstruction of justice. Due to the fact that the obstruction of justice continued for ten months after the killing of Dean, the court viewed it as a separate offense, and ordered that the sentences be served consecutively. Dungan was given credit for time served and was properly informed of the time limits for appealing the sentences and for applying for post conviction relief.

A motion to reconsider sentences was filed by Dungan on March 19, 2020, and was denied by the trial court on August 27, 2020.

## CONSECUTIVE SENTENCES

Dungan appealed. In her counseled arguments, she contends that her sentences are excessive. She urges that the trial court erred in imposing consecutive sentences for offenses arising out of the same course of conduct. This argument is without merit.

---

[4] As discussed above, defense counsel did not include this transcript in the designation of the record. A "Second Motion to Suppress" was filed December 2, 2019, but was withdrawn at the entry of the guilty plea. This was actually the third motion to suppress. The "Second Motion" alleged that Dungan's statement to law enforcement officers on May 31, 2018, was obtained in violation of her right to counsel.

## Legal Principles

Regarding concurrent and consecutive sentences, La. C. Cr. P. art. 883 provides:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.

Concurrent sentences arising out of a single course of conduct are not mandatory, and consecutive sentences under those circumstances are not necessarily excessive. *State v. Sandifer*, 53,276 (La. App. 2 Cir. 1/15/20), 289 So. 3d 212; *State v. Butler*, 51,922 (La. App. 2 Cir. 4/11/18), 247 So. 3d 1006; *State v. Hebert*, 50,163 (La. App. 2 Cir. 11/18/15), 181 So. 3d 795. In cases involving multiple offenses and sentences, the trial court has limited discretion to order that the multiple sentences are to be served concurrently or consecutively. *State v. Heath*, 53,559 (La. App. 2 Cir. 11/10/20), 304 So. 3d 1105, *writ denied*, 20-01422 (La. 4/7/21), 313 So. 3d 981; *State v. Sandifer*, *supra*; *State v. Dale*, 53,736 (La. App. 2 Cir. 1/13/21), 309 So. 3d 1031; *State v. Nixon*, 51,319 (La. App. 2 Cir. 5/19/17), 222 So. 3d 123, *writ denied*, 17-0966 (La. 4/27/18), 239 So. 3d 836; *State v. Robinson*, 49,677 (La. App. 2 Cir. 4/15/15), 163 So. 3d 829, *writ denied*, 15-0924 (La. 4/15/16), 191 So. 3d 1034.

A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. *State v. Nixon*, *supra*. When consecutive sentences are

imposed, the court shall state the factors considered and its reasons for the consecutive terms. Among the factors to be considered are the defendant's criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant constitutes an unusual risk of danger to the public, the potential for the defendant's rehabilitation, and whether the defendant has received a benefit from a plea bargain. *State v. Collins*, 53,704 (La. App. 2 Cir. 1/13/21), 309 So. 3d 974, *writ denied*, 21-00369 (La. 6/8/21), 317 So. 3d 329; *State v. Dale*, *supra*; *State v. Wing*, 51,857 (La. App. 2 Cir. 2/28/18), 246 So. 3d 711. However, the failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. *State v. Dale*, *supra*; *State v. Nixon*, *supra*; *State v. Robinson*, *supra*.

## Discussion

The record shows that the trial court did not err in imposing consecutive sentences in this case. La. C. Cr. P. art. 881.2 provides that a defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea. Dungan entered a guilty plea to manslaughter and obstruction of justice with the understanding that the trial court might impose consecutive sentences for these offenses. The trial court discussed the sentences that might be imposed for manslaughter and obstruction of justice and informed Dungan that:

> Also with regard to the plea agreement the sentences may run consecutively with each other or they may run concurrently with each other and that decision is being left to me as well. Okay? Is that the sentence, or is that the plea that you anticipated that you would receive and the sentences in

7

accordance with my prerogative as to how I want to sentence, is that what you understood was going to happen?

Dungan replied, "Yes, sir." Therefore, she is precluded from arguing that the trial court erred in imposing consecutive sentences.

However, even if the possibility of consecutive sentences had not been agreed to in the plea bargain, the record supports the trial court's decision to impose the sentences consecutively. The trial court noted that, in this case, the charges of manslaughter and obstruction of justice were two separate offenses; they did not arise from the same act or transaction, or constitute parts of a common scheme or plan. In La. R.S. 14:31, manslaughter is defined, in part, as a homicide which would be murder under either La. R.S. 14:30 (first degree murder) or La. R.S. 14:30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Obstruction of justice is defined, in part, in La. R.S. 14:130.1, as committing certain defined acts when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding. One of those acts is tampering with the evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either: (a) at the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law

8

enforcement officers; or (b) at the location of storage, transfer, or place of review of any such evidence. *See* La. R.S. 14:130.1(A)(1).

As argued by the state, the manslaughter charge and the obstruction of justice charge did not arise from the same course of conduct. The trial court agreed, finding that Dungan killed Dean, and then burned and buried the body. For ten months, Dungan actively sought to prevent law enforcement from discovering the body, even though they came to her property and conducted a search. Under these circumstances, the trial court was correct in finding that the offenses of manslaughter and obstruction of justice were separate offenses for which Dungan could be sentenced to consecutive sentences.[5]

The gruesome facts also support the imposition of the consecutive sentences in this matter. Dungan contends that consecutive sentences are only justified when the offender poses an unusual risk to the safety of the public. She argues there is no showing that she poses such a risk. She claims that this was a domestic violence situation which occurred in the heat of the moment. She asserts that the victim was going to lock her in a dark room and her crime was a reaction to mental torture. Dungan disagreed that this was a heinous offense. She argues that, although burning the victim's body deprived the family of a burial, the victim was not tortured. She contends that her poor health and lack of a criminal history favored the imposition of concurrent sentences.

---

[5] *See and compare State v. Yelverton*, 12-745 (La. App. 5 Cir. 2/21/13), 156 So. 3d 53, *writ denied*, 13-0629 (La. 10/11/13), 123 So. 3d 1217, in which the fifth circuit affirmed a maximum sentence for manslaughter and a consecutive sentence of ten years for obstruction of justice, imposed upon a first felony offender. The defendant shot the victim in a car, disposed of the body and evidence, and tried to wash the blood out of the car. The court found that these were two separate incidents justifying the imposition of consecutive sentences.

The record does not support Dungan's arguments. Even though she did not have a prior criminal history, the gravity and dangerousness of the offenses, the viciousness of the crimes, and the harm done to others support consecutive sentences. Dungan was originally charged with first degree murder and received the benefit of a favorable plea agreement. She killed the victim in order to obtain his money. Although she pled guilty to manslaughter, she was originally charged with first degree murder. The facts show that Dungan did not act under provocation or heat of blood. She had previously tried to kill the victim by putting excessive amounts of Xanax in his hamburger. Further, she did not simply hide the body; she went to great lengths to completely destroy it in order to avoid detection of her crime. For months, she resisted the attempts of law enforcement officers to find out what happened to Dean. Dungan told Ford that she was not sorry she committed the crime. In addition, a few months after she killed Dean, Dungan traveled to Georgia and intentionally burned down a house. The facts of this case show that Dungan poses an unusual risk of danger to the public. Her claims that she was the victim of domestic abuse were self-serving. Her medical condition did not prevent her from killing Dean, burning and burying the body.[6] These factors support the imposition of consecutive sentences in this case.

## EXCESSIVE SENTENCES

Dungan asserts that the sentences were unconstitutionally harsh and excessive given the circumstances of the case. She claims that the sentence

---

[6] Although she claims she is "legally blind" from multiple sclerosis, we note that, during her videotaped statement with law enforcement officers, while informing the officers where the body was located, Dungan had no difficulty scrolling though a camera and identifying small pictures with the assistance of a deputy's reading glasses.

of 30 years for manslaughter is excessive for a 62-year-old first offender with multiple sclerosis and the consecutive sentences, totaling 40 years, are, in effect, a life sentence for her. This argument is without merit.

**Legal Principles**

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Collins*, *supra*; *State v. Dale*, *supra*; *State v. Sandifer*, *supra*; *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. Dale*, *supra*. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Dale*, *supra*. The trial court is not required to assign any particular weight to any specific matters at sentencing. *State v. Collins*, *supra*; *State v. Dale*, *supra*; *State v. Parfait*, 52,857 (La. App. 2 Cir. 8/14/19), 278 So. 3d 455, *writ denied*, 19-01659 (La. 12/10/19), 285 So. 3d 489.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Dale*, *supra*; *State v. Meadows*, 51,843 (La. App. 2 Cir. 1/10/18), 246 So. 3d 639, *writ denied*, 18-0259 (La. 10/29/18), 254 So. 3d 1208.

As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. However, in cases where the defendant has pled guilty to an offense which does not adequately describe his conduct, the general rule does not apply and the trial court has great discretion in imposing the maximum sentence possible for the pled offense. This is particularly true in cases where a significant reduction in potential exposure to confinement has been obtained through a plea bargain and the offense involves violence upon a victim. *State v. Williams*, 48,525 (La. App. 2 Cir. 11/20/13), 128 So. 3d 1250. *See also State v. Adams*, 53,409 (La. App. 2 Cir. 3/4/20), 293 So. 3d 1187; *State v. Parfait*, *supra*.

The trial court has wide discretion to impose a sentence within the statutory limits, and the sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Dale*, *supra*; *State v. Allen*, 49,642 (La. App. 2 Cir. 2/26/15), 162 So. 3d 519, *writ denied*, 15-0608 (La. 1/25/16), 184 So. 3d 1289. A trial judge is in the best position to consider the

12

aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *State v. Allen*, *supra*. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Williams*, 893 So. 2d at p. 14; *State v. Dale*, *supra*; *State v. Adams*, 53,055 (La. App. 2 Cir. 11/20/19), 285 So. 3d 526, *writ denied*, 20-00056 (La. 9/8/20), 301 So. 3d 15.

Regarding manslaughter, La. R.S. 14:31(B) provides, in part, that whoever commits manslaughter shall be imprisoned at hard labor for not more than 40 years. Regarding the penalty for obstruction of justice, La R. S. 14: 130.1(B) states, in part:

> B. Whoever commits the crime of obstruction of justice shall be subject to the following penalties:
>
> (1) When the obstruction of justice involves a criminal proceeding in which a sentence of death or life imprisonment may be imposed, the offender shall be fined not more than one hundred thousand dollars, imprisoned for not more than forty years at hard labor, or both.
>
> (2) When the obstruction of justice involves a criminal proceeding in which a sentence of imprisonment necessarily at hard labor for any period less than a life sentence may be imposed, the offender may be fined not more than fifty thousand dollars, or imprisoned for not more than twenty years at hard labor, or both.

### Discussion

At the sentencing hearing on March 10, 2020, the trial court reviewed the lengthy PSI report, which contained information from the police investigation in which Dungan attempted to mislead law enforcement officers by telling them that she heard there was an explosion at a plant in Iowa where Dean had been working. The police determined that Dean was not employed there. A subpoena of bank records showed that, between July

13

and September 2017, Dungan took large amounts of cash out of Dean's bank account and deposited the funds in their joint account. The police reports cited in the PSI also reflect that Dungan first said she hit Dean in the back of the head with a pipe, but later said she shot him in the head with a pistol. She then used a tractor to move the body and dig a hole. After burning the body, she buried it.

The court also considered letters submitted on behalf of Dungan and by the victim's family. Jason Dean, the victim's nephew, addressed the court and asked that Dungan receive the maximum sentences possible. He stated that his father was very close to the victim and had been having a hard time coping since his brother's death.

Kenneth Dean, the victim's brother, addressed the court. He said his brother was not an abuser and did not use drugs. Prior to this offense, Kenneth encouraged the victim to provide for Dungan in his will. The last time Kenneth heard from his brother was June 29, 2017, when the victim told him they had executed their wills. Dungan killed Dean two weeks later and withdrew money from his bank account in incremental amounts. Kenneth noted that one small footbone was all that was ever found of his brother, and Dungan said she was not sorry she killed him.

Dungan addressed the court and stated that Dean was not the man the others said he was. She told about being locked in a room at times. She admitted hitting the victim in the back of the head, but claimed she did not know he was dead. She denied having a backhoe with which to bury the body and claimed that she was forced to make some statements.

In imposing the sentences, the court considered the factors set forth in La. C. Cr. P. art. 894.1. As mitigating factors, the court considered that

14

Dungan had no prior criminal history. The court considered Dungan's assertions that Dean was controlling and mentally abusive, that Dungan completed some Bible College coursework while incarcerated, and that a friend told the probation and parole officer that Dean put Dungan down frequently. As aggravating factors, the court considered that Dungan committed the crime to obtain the victim's money and went to great lengths to conceal her crime. The court was aware of Dungan's medical condition, but found that prison would not entail a hardship on her or her dependents.

The court found that, based upon the horrific nature of the offense, Dungan went to great lengths to hide the commission of the crime. The offenses exhibited a callous disregard for human life and the court found that Dungan might commit another offense if given a suspended sentence or probation. The court determined that Dungan needed correctional treatment in a custodial environment and that any lesser sentence would deprecate the seriousness of the offenses. According to the trial court, Dungan must have contemplated that her conduct would cause the death of Dean and there was nothing to indicate that she acted under strong provocation or that there were substantial grounds tending to excuse her conduct. The court found that the horrific measures that Dungan took to dispatch another human being indicated a propensity that such behavior would recur in the future.

According to the court, for the most part, Dean was a kind and loving human being. Although there was an indication that the victim had some peculiar ways, there was no indication that he was violent or abusive. The court considered that the victim's family expressed sorrow and horror that Dungan killed Dean for his money and that she did so in a way that deprived the family of giving him a proper burial and having closure for themselves.

The sentences imposed in this case are not excessive. The ten-year sentence for obstruction of justice was within the sentencing cap set forth in the plea agreement. Under La. C. Cr. P. art. 881.2, Dungan is precluded from arguing that the sentence for that offense is excessive.

For the offense of manslaughter, the 30-year sentence imposed by the trial court was considerably less than the 40-year maximum sentence that could have been imposed. Dungan was originally charged with first degree murder, which carries a penalty of death or life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. By being allowed to plead guilty to manslaughter, Dungan received a substantial benefit from her extremely favorable plea agreement. Also, her offense involved violence on the victim.

The record shows that Dungan murdered Dean for his money and went to great lengths to hide her offense. The murder was premeditated; Dungan had previously attempted to kill the victim. Her stories about alleged abuse and how the murder occurred were inconsistent. Dungan never expressed remorse for killing Dean. In fact, she told Ford that she was not sorry it happened. Given the heinous nature of these offenses, Dungan's lack of remorse, and the benefit she received from her plea agreement, the sentences are not grossly disproportionate to the seriousness of the offenses, and do not shock the sense of justice. We have carefully listened to the entirety of Dungan's lengthy recorded conversation with Ford on May 29, 2018, and we have watched all of the video recording of her long interview and statement given to law enforcement officers on May 31, 2018. Both recordings exhibit a complete lack of remorse on Dungan's part for the

murder of Dean, and no feelings or sympathy for the victim or his family. Dungan's callousness and indifference are striking and disturbing.

After reviewing the record and considering all the factors of this case, we find that the court acted within its discretion in sentencing Dungan to serve 30 years at hard labor for manslaughter, ten years at hard labor for obstruction of justice, and ordering the sentences to be served consecutively.[7]

## "*PRO SE*" ARGUMENTS

In addition to the assignments of error filed by her retained attorneys, Dungan filed a letter with this court setting forth matters she wanted considered on appeal. Our clerk's office informed Dungan that her attorneys

---

[7] A comparison of the punishment imposed with sentences imposed for similar crimes is useful in determining whether a sentence, by its excessive length or severity, is grossly out of proportion to the underlying crime. *State v. Fruge*, 14-1172 (La. 10/14/15), 179 So. 3d 579; *State v. Little*, 52,131 (La. App. 2 Cir. 8/15/18), 252 So. 3d 1038, *writ denied*, 18-1582 (La. 3/25/19), 267 So. 3d 594. Even so, sentences must be individualized to the particular offender and to the particular offense committed. *State v. Little*, *supra*.

Dungan's sentence for manslaughter was in conformity with those imposed in other cases under similar conditions. *See State v. Taylor*, 49,467 (La. App. 2 Cir. 1/14/15), 161 So. 3d 963, in which a 30-year sentence for manslaughter was imposed upon an intellectually disabled defendant with no criminal history; *State v. Viltz*, 2018-184 (La. App. 3 Cir. 11/28/18), 261 So. 3d 847, *writ not cons.*, 19-00764 (La. 8/12/19), 279 So. 3d 915, in which a 30-year sentence for manslaughter was imposed on a first felony offender; *State v. Edwards*, 2007-1058 (La. App. 3 Cir. 3/12/08), 979 So. 2d 623, *writ denied*, 08-2693 (La. 9/18/09), 17 So. 3d 391, in which a 30-year sentence for manslaughter was imposed upon a defendant originally charged with second degree murder where the facts failed to support the defendant's claim that he had been harassed by the victim on the night of the shooting; *State v. Lofton*, 97-00383 (La. App. 3 Cir. 10/8/97), 701 So. 2d 712, *writ denied*, 98-0389 (La. 6/5/98), 720 So. 2d 679, in which a 32-year sentence was imposed for manslaughter on a defendant who helped her mother hire someone to kill her abusive father; *State v. Ray*, 2010-1126 (La. App. 4 Cir. 6/29/11), 70 So. 3d 998, in which a 30-year hard labor sentence was imposed for manslaughter and 20 years at hard labor for obstruction of justice, to run concurrently, for a defendant who stabbed a disabled man who was on the ground and unable to retreat; *State v. Garrison*, 15-285 (La. App. 5 Cir. 12/23/15), 184 So. 3d 164, *writ denied*, 16-0258 (La. 2/10/17), 215 So. 3d 700, in which a 30-year sentence for manslaughter was imposed on a juvenile who took the victim's gun from him and shot him seven times, including once in the back, claiming he acted in self-defense; *State v. Johnson*, 03-747 (La. App. 5 Cir. 11/25/03), 862 So. 2d 237, in which a 30-year sentence for manslaughter was imposed on a first felony offender with a history of mental illness and substance abuse.

and the prosecution would be provided with copies of the letter, and it would be considered as a supplemental *pro se* brief.[8]  In her "*pro se* brief," Dungan seeks to attack the factual basis underlying her convictions.  She brings up objections to her confession to law enforcement officers and her friend, Ford, previously asserted in motions to suppress.  She attacks her guilty plea, claiming that her attorney misled her regarding her possible sentencing exposure and that her guilty plea was the result of threats and coercion.  None of these claims are properly before the court and they are not supported by the record.

Throughout this case, Dungan frequently changed her story about what happened to Dean.  In her letter, Dungan sets forth yet another version.  She claimed that Dean locked her in "the shed in the barn" and let her out when he thought company was coming.  She said she hit him across the back with a piece of PVC pipe.  She asserted that this was the last time she saw him and that he was not dead or badly hurt.  She said she ran into the house and later learned that he left to go off somewhere to work.

She claimed she only took their "personal money" and that Dean still had over $100,000 in the bank.  She said she spent the money on fencing for the farm and an 18-wheeler that Dean had already arranged to purchase.  She maintained that Dean's 2017 revision to his will was minor; it named her son as a beneficiary if something happened to Dungan.

In a postscript, Dungan said that dogs were brought to her property twice and nothing was found.  She showed officers a burn pile where a

---

[8] The letter contains no assignments of error, as required by U.R.C.A 1-3, which states that appellate courts will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise.  However, we have reviewed the complaints and determined that they are not properly before this court or supported by the record.

18

garbage can had been emptied and burned and that is where officers claimed they found a bone fragment and tobacco pouches. She maintained that she did not have a way to dig a hole for the body. She claimed the sheriff told her he found a complete skeleton with a bullet hole in the head and "This is on a tape they say you can't understand."

These arguments cannot be raised on appeal following a guilty plea. A guilty plea relieves the state of the burden of proving guilt and waives the defendant's right to question the merits of the state's case and the factual basis underlying the conviction, as well as appellate review of the state's case against the defendant. *State v. Hardy*, 39,233 (La. App. 2 Cir. 1/26/05), 892 So. 2d 710. Because Dungan entered a valid guilty plea and admitted that she was, in fact, guilty of the offenses charged, she cannot now question the merits of the state's case and the factual basis underlying the conviction.

Next, the letter attacks Dungan's confession to law enforcement officers and her statement to Ford. These statements were the subject of motions to suppress in the trial court. Dungan claimed that the "tape" from the sheriff's office "cannot be understood because of the threats that was [sic] being made on it." She denied confessing to the crime. Dungan also asserted that she did not confess to Ford, but they had been drinking wine and she told Ford about a nightmare she had. She claimed "they only listened to parts of the tape."

The statements made to law enforcement officers and to Ford were the subject of motions to suppress in the trial court. It is well settled that entry of an unqualified plea of guilty waives all nonjurisdictional defects occurring prior thereto, and precludes review thereof either by appeal or, where appeal is unavailable, by supervisory review. In *State v. Crosby*, 338

19

So. 2d 584 (La. 1976), the Louisiana Supreme Court held that, where a defendant, at the time of entering a guilty plea, expressly stipulates that he does not waive his right to the review of a nonjurisdictional pre-plea ruling, the court will review that ruling. *State v. Moore*, 420 So. 2d 1099 (La. 1982). *See also State v. Stephan*, 38,612 (La. App. 2 Cir. 8/18/04), 880 So. 2d 201. Because Dungan did not reserve her right to object to the rulings on the motions to suppress, she cannot now raise these issues on appeal.

Further, the record fails to support the allegations made by Dungan in her letter regarding her statements to law enforcement officers and to Ford. As stated above, this court has carefully reviewed the video recording of Dungan's confession to law enforcement officers and the audio recording of her confession to Ford. The law enforcement officers did not use any threats or coercion to obtain a statement from Dungan. In her conversation with Ford, Dungan was not describing a dream when she said she killed Dungan. There were no omissions in the recordings and this court reviewed the recordings in their entirety.

Dungan seems to attack the guilty plea itself, claiming that her lawyer misinformed her regarding possible sentencing exposure and that her guilty plea was obtained by threats and coercion. Dungan stated her lawyer told her she would probably get five years on the manslaughter charge and ten years on the obstruction of justice charge. She claimed that the bailiff in court when she pled guilty was the same detective that had been harassing her for a year, and she was intimidated into pleading guilty. After she pled guilty, she maintained that her lawyer told her "all deals are off" because she

20

told the probation and parole officer the truth about what happened.[9] Dungan also asserted that the sheriff threatened to kill her farm animals if she did not confess. She said that sheriff's deputies came to her cell and offered to buy her tractors and farm equipment because she "would never need it again." She claimed that the sheriff's office stole things from her house, including money and jewelry in a safe.

Upon motion of the defendant and after a contradictory hearing, which may be waived by the state in writing, the court may permit a plea of guilty to be withdrawn at any time before the sentence. La. C. Cr. P. art. 559. Where the record establishes that an accused was informed of and waived his right to trial by jury, to confrontation, and against self-incrimination, then the burden shifts to the accused to prove that, despite this record, his guilty plea was involuntary. *State v. Johnson*, 51,430 (La. App. 2 Cir. 7/5/17), 224 So. 3d 505. A defendant has no absolute right to withdraw a guilty plea. A trial court, in its discretion, may allow a guilty plea to be withdrawn at any time prior to sentencing. La. C. Cr. P. art. 559(A). After sentence has been imposed, La. C. Cr. P. art. 559 does not apply, although the trial court can still grant a post sentence motion to withdraw a guilty plea. *State v. Johnson*, *supra*. A mere change of heart or mind by the defendant as to whether he made a good bargain would not ordinarily support allowing the withdrawal of a bargained guilty plea. *State v. Burnett*, 33,739 (La. App. 2 Cir. 10/4/00), 768 So. 2d 783, *writ denied*, 00-3079 (La. 11/2/01), 800 So. 2d 864.

---

[9] The PSI reflects that Dungan admitted to the probation and parole officer who prepared the report that she hit Dean in the head with a pipe.

In this case, Dungan has not made the required motion in the trial court, either before sentencing or post sentence, to withdraw her guilty plea. The requisite hearing has not been held by the trial court and the arguments contained in Dungan's letter regarding her guilty plea are not properly before this court for review.

However, the record does not show that Dungan's guilty plea was obtained through threats and coercion or that her attorney misled her regarding her sentencing exposure. The transcript of Dungan's guilty plea and the form she signed at the time the plea was entered show that she was correctly informed of the sentencing range for manslaughter and that, under the terms of the plea agreement, her sentence for obstruction of justice had a cap of ten years at hard labor. She was informed that the trial court might impose the sentences consecutively. Dungan stated that she discussed the plea agreement with both of her retained attorneys, who were present with her in court at the time of the entry of the guilty plea. She was asked by the trial court if she wanted to accept the terms of the plea agreement and she said yes.

Dungan was placed under oath. She stated that she was fully aware of what was going on in court, she understood the crimes of manslaughter and obstruction of justice, and was pleading guilty because she was guilty of those offenses. Dungan signed the plea agreement.

Dungan said she was satisfied with the services of her retained attorneys and said she had sufficient time to talk with her attorneys and discuss the case. She stated that she was satisfied that her attorneys fully considered the case and any possible defenses. In fact, one of her retained attorneys represented her in this appeal.

22

The court went through the definition of manslaughter and obstruction of justice, the sentencing range, and the sentencing cap in her case for the obstruction of justice charge. Dungan said she was fairly treated with her plea agreement.

Under oath, Dungan denied that anyone, including the attorneys or the prosecutor, threatened her, tricked her, or framed her into pleading guilty. She acknowledged that no one promised her anything to encourage her to plead guilty. She said she did not believe that any of her constitutional rights had been violated in connection with her arrest and these proceedings.

The trial court informed Dungan that, by pleading guilty, she waived her constitutional rights to a trial by jury, confrontation, and against compulsory self-incrimination. She acknowledged that she was aware that her guilty plea waived any defects in the proceedings. Dungan said she did not have any questions about the plea agreement, and that she was entering her guilty plea freely, voluntarily, and as a result of her own independent decision.

The record shows that, prior to the entry of her guilty plea, Dungan was informed of the charges against her, the sentencing range, the rights waived by pleading guilty, and she fully and voluntarily entered the guilty plea, admitting that she committed the offenses. The record does not support Dungan's self-serving claim that she was misled by her attorney regarding her sentencing exposure or that her plea was the result of threats or coercion.

We have also reviewed the entire record and find nothing we consider to be error patent. La. C. Cr. P. art. 920(2).

**CONCLUSION**

For the reasons set forth above, we affirm the convictions and sentences of the defendant, Melinda R. Dungan.

**AFFIRMED.**